**UNITED STATES STEEL CORPORA-TION, Republic Steel Corporation, et al., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants,**

and

**Highveld Limited, Companhia Siderurgica Paulista (COSIPA), and Usinas Siderurgicas De Minas Gerais (USIMINAS), Defendants-Intervenors.**

Court No. 82-10-01361.

United States Court of International Trade.

July 22, 1983.

Law Department of United States Steel Corporation (D.B. King, J.J. Mangan, C.D. Mallick, L. Ranney and P.J. Koenig, Pittsburgh, Pa., of counsel), for plaintiff U.S. Steel Corp.

Cravath, Swaine & Moore, New York City (Joseph R. Sahid and Steven Schulman, New York City, of counsel) for plaintiffs, Republic Steel Corp., Inland Steel Co., Jones & Laughlin Steel Inc., National Steel Corp., and Cyclops Corp.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Branch Director, A. David Lafer and Francis J. Sailer, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C., for defendants.

Wald, Harkrader & Ross, Washington, D.C. (William H. Barringer, Christopher A. Dunn and Arthur J. Lafave III, Washington, D.C., of counsel) for defendants-intervenors COSIPA and USIMINAS.

WATSON, Judge:

In this opinion, the Court answers the difficult question of whether to allow in-house or corporate counsel to have access to confidential information regarding the business of their employer's competitors. The

question was raised in *United States Steel Corp., et al., v. United States,* Consolidated Court No. 82–3–00288; but the settlement of the steel dispute with the European Community made the issue moot.[1] Now the issue has been raised once more in this motion[2] by U.S. Steel for access to the business confidential portions of the record. These are portions of the record of the final countervailing duty determinations on carbon plate steel from South Africa[3] and Brazil.[4] To the extent that it claims that these determinations were not supported by substantial evidence, there is no doubt that U.S. Steel has a need for access.

There is also no question that the information sought contains confidential business data of U.S. Steel's competitors in South Africa and Brazil, and could cause significant harm to them if used outside this judicial review. An *in camera* examination by the Court was sufficient to show that this information contains revealing financial, production, and sales data.

The statute which governs this dispute is part of the law which provides for judicial review on the administrative record. At 19 U.S.C. § 1516a(b)(2)(B) it provides as follows:

> (B) *Confidential or privileged material.* —The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

This provision has been held to require the normal balancing test which courts make between the need for the information

and the need for maintenance of confidentiality. *Connors Steel Co. v. United States,* 85 Cust.Ct. 112, C.R.D. 80–9 (1980). *Roquette Freres v. United States,* 4 CIT ——, 554 F.Supp. 1246 (1982).

In this case, the test is complicated by the fact that disclosure is requested for in-house counsel, the only ones who have been representing U.S. Steel in these matters. The Court has previously shown a reluctance to release confidential business information to the in-house counsel of competitors. It expressed this reluctance briefly in *Atlantic Sugar Ltd. v. United States,* 85 Cust.Ct. 133, C.R.D. 80–18 (1980) when it stated as follows:

> The court is of the opinion that in actions such as these the confidential business information of business competitors should not be disclosed to in-house counsel unless a party has no other reasonable way of adequately preparing and presenting its arguments. This preference is not based on any reservation as to the integrity of in-house counsel but is intended to avoid placing them under the unnatural and unremitting strain of having to exercise constant self-censorship in their normal working relations.

At this time the Court, in the necessary exercise of its discretion, has to extend its reasoning to in-house counsel for U.S. Steel. This carries with it the conclusion that in the present circumstances the retention of outside counsel remains a reasonable way for U.S. Steel to satisfy its need for this information.

It is only because the Court sees this information as having ineradicable importance that it takes this step. In the combination of its detail, and its scope, the information is extremely potent. Its nature and

---

**1.** At the request of U.S. Steel, its memorandum of August 6, 1982, the brief of *amicus* Corporate Counsel of August 9, 1982 and the transcript of the oral argument held on August 19, 1982, all from Court No. 82–3–00288, have been incorporated in this record and reviewed by the Court.

**2.** U.S. Steel points out that it merely proposed an order in response to a motion for a protective order with regard to documents designated

as "business confidential" in the administrative record, which was filed by the government in February. In any event, the issue of access for in-house counsel has been raised and fully briefed.

**3.** 47 Fed.Reg. 3,379 (1982).

**4.** 48 Fed.Reg. 2,568 (1983).

volume place it beyond the capacity of anyone to retain in a consciously separate category. When the Court said in *Atlantic Sugar* that it was acting out of a desire to avoid placing lawyers under an unnatural and unremitting strain, it was really expressing its rationale indirectly and incompletely as a form of solicitude for the lawyers. The direct and complete reason is that, in the Court's judgment, it is humanly impossible to control the inadvertent disclosure of some of this information in any prolonged working relationship.

Obviously, this judgment can also apply to retained counsel in certain situations. It is impossible, however, to extend this reasoning to its logical conclusion and still have adversary proceedings and judicial review as contemplated by 19 U.S.C. § 1516a(b). So the distinction between in-house counsel and retained counsel is made because with respect to the former, a closer and more sustained relationship can be presumed as an outgrowth of the employer-employee relationship. It follows that a meaningful increment of protection can be obtained by excluding in-house counsel.

The Court's rationale has absolutely nothing to do with the possibility of deliberate disclosure of this information. The integrity of counsel for U.S. Steel is unquestioned and their unblemished record of adherence to protective orders is acknowledged.

The Court also accepts the representation that in-house counsel herein do not have direct involvement in pricing or other competitive decision-making. Nevertheless, the Court's concerns arise more from counsel's general position in the corporate environment than their specific duties. If they are somewhat isolated, it is still within a rather worldly cloister. In addition, the Court has to make some reasonable assumptions that they will move into other roles and functions and that the compartmentalization of this information will become even more difficult.

The Court simply sees a greater likelihood of inadvertent disclosure by lawyers who are employees, committed to remain in the environment of a single company. The factor of permanent employment by one company is a rational means by which to distinguish between lawyers. It is not a perfect distinction; but it is a reasonable one. It does not result in an elimination of risk; but it does offer a significant increase in protection.

It resembles the precautions taken in the manufacture, transportation, use, or storage of highly dangerous substances. The consequences of an accident are thought to be so catastrophic that steps which might ordinarily appear excessive, or burdensome, or which add only a modest incremental measure of safety, are justified.

We are concerned here not with physical safety upon which lives depend, but with the safety of information upon which livelihoods depend. The rationale is the same. The greater the dangerous potential of the substance involved, the greater the caution with which it must be handled.

The Court has found no persuasive precedent to suggest that release to in-house counsel is advisable. First of all, in the eyes of the Court, the magnitude of the information involved here distinguishes this situation immediately from the cases in which in-house counsel were permitted access to the confidential information of competitors. Furthermore, there are other distinctions.

The case with the closest factual pattern involved a Federal Trade Commission investigation under 15 U.S.C. § 45 in which detailed cost information for a number of products of a cereal manufacturer were released to counsel for competitors without being limited to retained counsel. *F.T.C. v. J.E. Lonning, et al.,* 539 F.2d 202 (D.C.Cir. 1976). In that case, the terms of the protective order of the administrative judge were affirmed by the District Court and that was found not to be an abuse of discretion. However, the release to in-house counsel appears to have been more the result of a failure by the manufacturer to keep asserting its argument for limitations before the administrative judge than a reasoned necessity. 539 F.2d at 210 and 211. In any event, the decision does not offer a

guide to the exercise of judicial discretion in such matters but simply the approval of a single, opaque exercise of discretion.

The release of confidential information to in-house counsel in *Baxter Travenol Laboratories, Inc. v. Lemay,* 89 F.R.D. 410 (D.C.S.D.Ohio, 1981) was based on the court's satisfaction that *active misuse* of the material would not occur. That court's concern was satisfied by a decision that the attorney in question could be expected to maintain a differentiation between proper use in the litigation and improper use for other business purposes. From the opinion, it appears that the improper business purpose which most concerned the objecting party was the allegedly anti-competitive litigation in which the access dispute was arising. On this point the Court was dealing primarily with a claim of unfair competition by means of litigation, rather than the prospect of misuse of confidential information in the normal competitive arena. In any event, the Court was evidently not concerned with inadvertent disclosure. Moreover, this Court does not believe that the information involved here can be so easily differentiated and compartmentalized.

The Supreme Court's refusal to make distinctions between corporate attorneys and outside counsel in *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) does not provide guidance for this situation. That decision established that the relationship between in-house counsel and the corporate client carries with it the normal privilege protections for the client's communications. It has nothing to do with the risks involved in the access to confidential information of other corporations or the proper distinctions that may be made in those cases.

None of these cases provide a persuasive rationale for not taking the most conservative measures to safeguard highly confidential information. It is also noteworthy that we are speaking of an area in which confidentiality has been a stated concern of Congress and the maintenance of confidentiality has been specifically provided for in the law.

The Court does not believe that its ruling infringes on Constitutional rights. It has difficulty conceiving of the right of a particular lawyer to participate in a case, or the right of a person to choose a particular lawyer, as being superior to the right of a party to have its confidential information meaningfully protected in litigation.

There is no shortage of cases in which in-house counsel have been denied access to confidential information. *See F.T.C. v. Exxon Corp.,* 636 F.2d 1336 (D.C.Cir.1980) and cases cited therein. It seems that each court must grapple with this problem in the light of its own evaluation of the information involved, the risks presented and the possible consequences.

In making this ruling, and in the exercise of its discretion, the Court relies on its own evaluation of the risks of disclosure. It does not rely on the fears of respondents in the administrative proceedings that their confidential information may be used improperly or on the related concern of the agencies that important sources of information for informed decision-making will refuse to fully cooperate. Those from whom the agencies request information should comply with the requests and trust to the measured protections provided by law. As stated previously, the Court's concern here is solely with the greater risk of *inadvertent* disclosure within the corporate setting.

For the reasons given above, the Court will not grant access for in-house counsel to the requested business confidential information set out in the proposed order of United States Steel Corporation and their motion is DENIED.