ORNATUBE ENTERPRISE CO., LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND HANNIBAL INDUSTRIES, INC., DEFENDANT-INTERVENOR

Court No. 92–07–00444

(Dated March 10, 1993)

MEMORANDUM OPINION AND ORDER

*The Judicial Protective Order:*

MUSGRAVE, *Judge:* The plaintiff has moved for a Judicial Protective Order "(JPO"). Defendant-intervenor opposes plaintiff's motion and pleads that the Court deny Mr. Shieh, plaintiff's counsel, a JPO altogether. In the alternative, defendant-intervenor requests that Mr. Shieh be placed under the same order as previously existed by consent between it and the government.

Defendant-intervenor's opposition motion raises serious doubts, supported in the record, as to whether plaintiff's counsel, Liang-Houh Shieh, or any member of his law firm (of the same name) can be trusted with confidential information in this case. The Court concludes that plaintiff's counsel should be denied access to confidential information in this case; accordingly, plaintiff's Motion for a Judicial Protective Order is denied.

BACKGROUND

Throughout the proceedings before the Department of Commerce ("Commerce" or "DOC" or "Department"), Mr. Shieh failed to follow the regulations and procedures of the Department with regard to proprietary information. For example, this failure led to the denial of his application for an administrative Protective Order ("APO"). *See Defendant-Intervenor's Memorandum in Opposition to Plaintiff's Motion for*

*Judicial Protective Order for Access to the Proprietary Portion of the Administrative Record ("Defendant-Intervenor's Brief")* at 2–4; 19 C.F.R. § 353.34(a). Mr. Shieh also frequently did not serve copies of APO documents filed with the DOC on opposing counsel subject to the APO. *Defendant-Intervenor's Brief* at 4; 19 C.F.R. § 353.31; *See Domestic Interested Parties' Letter of August 2, 1991, A. R. Doc. 17 at 1–2.* The sum of the evidence documented on the record of the administrative review below indicates that Mr. Shieh either did not understand or refused to abide by the regulations concerning the protection and dissemination of proprietary information.

Equally disturbing, Mr. Shieh showed a disrespect for the protection of proprietary information in his general handling of an inadvertent release of proprietary information to him by Commerce. On February 13, 1992, Mr. Shieh was faxed a letter from Commerce requesting that the materials and any copies be returned to the Department. *A. R. Doc. 42.* According to Commerce, Mr. Shieh's response was that he had not returned the materials because he was entitled to an APO and wanted to discuss provisions for obtaining one. *Memorandum of Telephone Conversation with Mr. Liang-Houh Shieh, A. R. Doc. 43.* When the document was finally returned, each page of the 107 page computer printout had been individually detached, and Mr. Shieh did not include a certification that he had not used, reproduced or disseminated this information in any manner. *See A. R. Doc. 47.*

When Commerce formally requested such a certification, *A. R. Doc. 48,* Mr. Shieh responded on February 19, 1992, with a letter containing the following statement:

> I would like you to send me a letter explaining why I have to follow the order from DOC for its own mistake. I also need legal citations as to under what rules DOC can repeatedly order me to do something for its own mistake * * *. If my APO is denied, why am I bound by APO * * *? When everything is clear to me, then I will make decision as to whether or not I have to follow DOC's order for its own mistake.

*A. R. Doc. 50* at 2.

In addition to the ethical and professional concerns raised by the above-mentioned behavior on the part of Mr. Shieh, his proposed JPO contains several technical flaws such as failing to state with specificity the persons in his office who would be granted access to his JPO, expanding the record beyond that previously allowed by the DOC, and placing unreasonable limits on the use of electronically stored data.

In deciding whether to release proprietary information under a JPO, the Court must balance the need for the information sought against the potential harm that would result from disclosure. *Chevron U.S.A., Inc. v. United States,* 11 CIT 76, 78 (1987). In *Chevron,* the Court stated its authority to deny a protective order in appropriate circumstances.

> It is clear that a court has the authority to "deny access to all [proprietary data] where the specific facts indicate a probability where

confidentiality, under any form of protective order, would be seriously at risk. *United States Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed. Cir. 1984), *vacating,* 6 CIT 55, 569 F. Supp. 870, *reh'g denied,* 6 CIT 176, *opinion amended,* 6 CIT 238, 578 F. Supp. 415 (1983).

*Chevron,* 11 CIT 79; See 19 U.S.C. § 1516a(b)(2)(B)(1982 & Supp. 1992); see also USCIT R. 26(c)(7) (allowing the Court to order that "commercial information not be disclosed or be disclosed only in a designated way"). In this case, there are specific facts which indicate that confidentiality, under any form of protective order, would seriously be at risk if Hannibal's information is released to counsel for plaintiff. The Court offered to hold oral argument on the issue of the JPO, provided that *Ornatube* produce a corporate representative to be present at the hearing. The Court obtained the consent of the defendant and of the defendant-intervenor. Although Mr. Shieh offered to appear on behalf of plaintiff, his firm declined to produce a corporate representative as requested by the Court.

Accordingly, the Court rules that it will not grant a JPO to Mr. Shieh's law firm. *Ornatube* is invited to present another legal representative to the Court that may satisfy the Court's concerns regarding the JPO elucidated above. Plaintiff's motion is denied.

*Motion to Submit Case Briefs to the Administrative Record:*

In addition to plaintiff's motion for a JPO, Plaintiff has created a self-styled motion without following Court rules or procedures to reintroduce two versions of his principal brief to the DOC into the administrative record by order of this Court. These briefs were expunged from the record by the DOC because they contained new information. The entirety of both briefs was expunged even though the second attempted filing included the new information as a severable exhibit. The apparent result is that plaintiff never succeeded in placing his brief—in any form—into the administrative record.

The DOC contends that the second filing did not comply with its order to edit out the new information and that the new information in the second filing was not limited to the severable exhibit.

> Ornatube submitted case briefs on March 10, 1992, and March 16, 1992, well after the deadline [October 15, 1991] for submitting factual information. Both case briefs contained factual information that was not submitted previously in Ornatube's original questionnaire response, in its deficiency response, or at any other time during the administrative review proceeding. The March 10 case brief contained completely new factual information concerning (1) Ornatube's internal quality control data, (2) Ornatube's actual cost of coil, (3) Ornatube's costs, quantities and sales contracts with suppliers regarding imported, hot-rolled coil, and (4) Ornatube's selling, general, and administrative ("SG & A") expenses. Exhibit 1; PR 59; CR 11. The March 16, 1992, case brief also contained new factual information concerning Ornatube's SG & A expenses. Exhibit

2; PR 66; CR 12. This was the same information Commerce identified as new in the March 10 case brief, together with further explanation of Ornatube's SG & A expenses. In addition, the March 10 case brief, which was replete with new factual information, was attached as an appendix to the March 16 case brief.

*Defendant's Opposition to Plaintiff's Motion to Submit Case Briefs* at 6–7.

Commerce further points out that Ornatube missed its deadlines and refused twice to comply with Department instructions on what it should have included in the case brief. Moreover, Commerce points out that the information contained in the two case briefs was not in the administrative record when Commerce decided upon its calculation methodology and determined that it would have to resort to BIA to calculate Ornatube's FMV. If this information is added to the administrative record, so Commerce argues, this Court will review Commerce's determination with the benefit of information that was not before the commerce decision-maker at the time Commerce issued its final results. *Defendant's Opposition to Plaintiff's Motion to Submit Case Briefs* at 9.

Ornatube has included new information in its March 16 brief. The Court does not see the difficulty in severing this new information, expunging it from the record, and retaining the information that did comply with Commerce's instructions for editing the March 10, 1992 case brief. The matter of the case briefs is accordingly remanded to the DOC for a reasonable revision of the submitted material. For example, Commerce could decide to admit only the March 16 brief without the "severable attachment" (section "D" entitled "New Information Issue"). Likewise, Commerce could reject the "new" SG & A figures used by Ornatube on page 8 of its March 16 brief. Rather, the figures submitted by Ornatube in its October 23, 1991 cost of production questionnaire response could be used in its place. *See A. R Doc. 66, Letter of DOC, March 23, 1992* at 1 (rejecting both case briefs and citing to new, improper information in the March 16 brief).

It is hereby ORDERED that plaintiff's motion for a JPO is denied. It is further

ORDERED that the Department of Commerce accept the information that was properly before it in the March 16 brief and expunge the new and improper information in accordance with this decision.