**MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., Matsushita Electronics Corporation, Matsushita Electric Corporation of America and Hoshiden Electronics Co., Ltd., Plaintiffs,**

v.

**UNITED STATES of America and The United States International Trade Commission, Defendants,**

**Tandy Corporation, Defendant–Intervenor.**

**Court No. 90–08–00391.**

United States Court of International Trade.

Sept. 25, 1990.

1104

Willkie Farr & Gallagher, William H. Barringer, William J. Clinton and Daniel L. Porter, Adduci, Mastriani, Meeks & Schill, Louis S. Mastriani, Washington, D.C., for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, Wayne Herrington, Acting Asst. Gen. Counsel, U.S. Intern. Trade Com'n, George Thompson, Washington, D.C., for defendants.

Cushman, Darby & Cushman, Arthur Wineburg and Marcia H. Sundeen, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION

TSOUCALAS, Judge:

Plaintiffs, Matsushita Electric Industrial Co., Ltd., Matsushita Electronics Corporation, Matsushita Electric Corporation of America ("Matsushita") and Hoshiden Electronics Co., Ltd. ("Hoshiden"), ask the Court pursuant to Rules 7(f) and 65(a) of the rules of this Court to grant a preliminary injunction removing the in-house counsel for Tandy Corporation ("Tandy") from the list of those with approved access to all confidential business proprietary information submitted to or released by the International Trade Commission ("ITC" or "Commission") during the antidumping duty investigation of imports of high information flat panel displays and subassemblies thereof. USITC Inv. No. 731–TA–469. Plaintiffs assert that the in-house counsel, Mr. Herschel Winn, is involved in competitive decisionmaking at Tandy and therefore is ineligible to access confidential information.

Mr. Winn applied for an administrative protective order ("APO") pursuant to 19 U.S.C. § 1677f(c) (1988) on July 31, 1990. In his application, Mr. Winn certified that, in his position as General Counsel at Tandy, he is not involved in competitive decisionmaking. *See* Exhibit A to *Intervenor Tandy Corporation's Opposition to Plaintiff's Motion for Preliminary Injunction* ("*Intervenor's Memorandum*"). Satisfied that Mr. Winn was not so involved, the Commission granted the APO request. Plaintiffs, who filed written objections to Mr. Winn's application, now seek a court order removing his name from the list of those eligible to access business proprietary information from the ITC.

A preliminary injunction will issue from this Court only if plaintiffs prove that four conditions have been met. Plaintiffs must show (1) that there is a likelihood of success on the merits; (2) that they will be immediately and irreparably harmed; (3) that the public interest would be better served by the issuance of the injunction; and (4) that the balance of the hardships on all the parties favors the plaintiffs. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Assoc. Ltd. v. Snyder,* 68 CCPA 27, 30, 646 F.2d 522, 525 (1981); *PPG Indus., Inc. v. United States,* 11 CIT 5, 6, 1987 WL 5317 (1987).

## I. Likelihood of Success on the Merits

For plaintiffs to ultimately succeed on the merits, that is, to have the ITC's action invalidated, they must show that the action of the ITC in granting the APO to Mr. Winn was arbitrary and capricious, or an abuse of discretion. Plaintiffs claim that the Commission did not follow either its own regulations or the relevant statute and thus its approval of the APO application was arbitrary and capricious. *Memorandum in Support of Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction* at 3 ("*Plaintiffs' Memorandum*").

The relevant statute was amended by the Omnibus Trade and Competitiveness Act of 1988 ("Trade Act") which states that

the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding.

19 U.S.C. § 1677f(c)(1)(A) (1988). The legislative history to this Act makes clear that those parties authorized to have access to business proprietary information include retained counsel and consultants or other experts. H.R.Rep. No. 576, 100th Cong., 2d Sess. 623 (1988), U.S.Code Cong. & Admin.News 1988, 1547, 1656. The conference report distinguishes *in-house* counsel, however, and states that in "determining whether in-house counsel may properly be given access, Commerce and the ITC should be guided by the factors enumerated in *United States Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir.1984)." *Id.*

In *U.S. Steel*, our appellate court held that, in deciding whether counsel may receive access to confidential information, the agencies and the court may not distinguish solely on the basis of whether counsel are in-house or retained. 730 F.2d at 1468. The court reasoned that in-house counsel are just as bound by the Code of Professional Responsibility as are retained counsel and should not be denied access simply because of their status as in-house counsel. They may be denied access only where it is determined that they are "involved in competitive decisionmaking." *Id.*[1]

The Commission has adopted the court's standard in its regulations. 19 C.F.R. § 207.7(a)(3) defines who may file an application for access to confidential information. Authorized applicants under this regulation may include the in-house attorney for an interested party "if the attorney is not involved in competitive decisionmaking

as defined in *U.S. Steel.*" 19 C.F.R. § 207.7(a)(3)(ii) (1990). Competitive decisionmaking was defined by the court as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468.

Attached to Mr. Winn's APO application was a letter to the ITC written on Tandy Corporation stationery. Though he identified himself as General Counsel, his stationery listed his titles as "Senior Vice President and Secretary." *See* Exhibit A of *Intervenor's Memorandum*. Mr. Winn stated that his duties as General Counsel include supervising Tandy's staff of attorneys, who institute and defend lawsuits on behalf of the corporation. They also prepare contracts and handle securities and labor matters. He stated in the letter that he is "not involved in decisions of pricing and the technical design of a product." *Id.*

Following plaintiffs' written opposition, Mr. Winn submitted another letter to the Commission, in which he elaborated on his responsibilities and stated repeatedly that he does not engage in competitive decisionmaking at Tandy. *See* Letter of Herschel Winn to Kenneth R. Mason (August 7, 1990), Exhibit C of *Intervenor's Memorandum*. He wrote that, in his position as Senior Vice President and Secretary, he reviews securities filings, employee benefit plans and stock purchase plans, and he keeps the minutes of the Board of Directors of Tandy. *Id.* Mr. Winn also asserted that he (or someone in his office) attends Corporate Staff Meetings where "results of operations and financial reports" are reviewed. *Id.* Additionally, he attends Radio Shack Retail Store Meetings where the current state of affairs of Radio Shack stores is examined. Mr. Winn stated that at none of these meetings are the issues of "pricing, product design, etc." discussed.

---

1. Of course, in-house counsel may also be denied access if there is reason to believe deliberate disclosure is likely to occur, but that applies to anyone being considered for access, not just in-house counsel.

The Court finds that Mr. Winn's stated responsibilities at Tandy as Senior Vice President and Secretary constitute involvement in the competitive decisionmaking process. His attendance at Corporate Staff, Radio Shack and Tandy Board of Directors meetings necessarily exposes Mr. Winn to the exchange of ideas regarding policies that are inherent in all such meetings. Though the Court has no reason to, and does not here, doubt Mr. Winn's veracity, the Court believes that the ITC has too narrowly interpreted the directives of the Federal Circuit in *U.S. Steel* and its own regulations.

While an in-house counsel is not, *per se*, involved in competitive decisionmaking, Mr. Winn's established positions as Senior Vice President and Secretary do not adequately isolate him from the policymaking elements of the corporation so as to render the risk of inadvertent disclosure minimal. Though there is no reason to believe Mr. Winn would deliberately disclose confidential data about Tandy's competitors to those involved in day-to-day pricing and policy decisions, his regular contact with such executives in the context of what necessarily are competitive decisionmaking meetings creates "an unacceptable opportunity for inadvertent disclosure" and renders him ineligible to receive access to the business proprietary information in this case. *See U.S. Steel*, 730 F.2d at 1468.[2]

Consequently, the Court finds that plaintiffs have a substantial likelihood of success on the merits and the first prong of the test for a preliminary injunction is satisfied.

## II. Immediate and Irreparable Harm

To establish immediate and irreparable harm, plaintiffs must show that there is a "viable threat of serious harm which cannot be undone." *S.J. Stile*, 68 CCPA at 30, 646 F.2d at 525. Plaintiffs contend that if confidential information is disclosed to Mr.

Winn, plaintiffs would lose their right to have the ITC's action reviewed by the court, because the case would be moot as to the disclosed information. Since the information cannot be "undisclosed," the court would be unable to redress plaintiffs' grievance and the action would be dismissed as moot, even if the court agreed that the Commission's action was arbitrary and capricious.

A number of decisions of this Court and our appellate court have held that the threat of mootness which would preclude judicial review constitutes irreparable harm. *Zenith*, 710 F.2d at 810; *Algoma Steel Corp. v. United States*, 12 CIT ——, ——, 696 F.Supp. 656, 658 (1988); *British Steel Corp. v. United States*, 10 CIT 716, 717, 649 F.Supp. 78, 80 (1986). Clearly, if Mr. Winn receives the proprietary information, plaintiffs' action would be mooted. Any relief subsequently granted by the Court would be pointless. Thus plaintiffs risk immediate and irreparable harm if the injunction is not granted.

## III. Balance of Hardships

The hardships which will befall plaintiffs if their motion fails are the exposure of confidential information to someone who is likely to be found to be involved in competitive decisionmaking at a competing corporation and the inability to get adequate relief if they ultimately succeed on the merits. Tandy stands to be deprived of the benefits of having its in-house counsel participate in the preparation of the case with full information, including proprietary information. However, Tandy already has retained able counsel who have been participating in the proceedings throughout the case and are well suited to capably protect Tandy's interests.[3] The balance of hardships, therefore, clearly favors the plaintiffs.

---

2. Furthermore, this Court has acknowledged that, unlike retained attorneys, in-house counsel "might be susceptible to demands of their corporate employers to violate a protective order." *D & L Supply Co. v. United States*, 12 CIT ——, ——, 693 F.Supp. 1179, 1182 (1988).

3. Unlike the situation in *U.S. Steel*, in this case Tandy would not have to find new outside attorneys to replace its in-house counsel, which the Court recognizes "would create an extreme and unnecessary hardship." *U.S. Steel*, 730 F.2d at 1468.

## IV. Public Interest

There is no question that there is a strong public interest favoring full disclosure of information relevant to the underlying proceedings. *See Komatsu Forklift Mfg. Co. of U.S.A. v. United States*, 13 CIT —, —, 717 F.Supp. 843, 846 (1989). However, there is also a strong public interest in denying access to confidential information to those who are likely to disclose, whether deliberately or not, that information in the context of competitive decision-making. For this reason, the Court finds that the public interest is best served by granting the injunction.

### Conclusion

Plaintiffs have met the burden of establishing that they have a substantial likelihood of success on the merits, that, if a preliminary injunction is not issued, they will suffer irreparable harm and that the balance of hardships and public interest are in their favor. Accordingly, plaintiffs' motion for a preliminary injunction denying Mr. Herschel Winn access to plaintiffs' business proprietary information is granted and the ITC is directed to strike Mr. Winn's name from the list of those eligible to receive confidential information in USITC Inv. No. 731–TA–469.