929 F.2d 1577
 13 ITRD 1113
 MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., Matsushita
Electronics Corporation, Matsushita Electric
Corporation of America and Hosiden
Electronics Co., Ltd.,
Plaintiffs-Appellees,
v.
The UNITED STATES and The United States International Trade
Commission, Defendants-Appellants,
and
Tandy Corporation, Defendant-Appellant.
 Nos. 91-1033, 91-1052.
 United States Court of Appeals,
Federal Circuit.
 April 3, 1991.
 
 William Barringer, Willkie, Farr & Gallagher, Washington, D.C., argued for plaintiffs-appellees. With him on the brief were Christopher Dunn and Daniel L. Porter. Louis S. Mastriani, Adduci, Mastriani, Meeks & Schill, Washington, D.C., argued for plaintiffs-appellees. With him on the brief was Larry L. Shatzer, II.
 George Thompson, Office of the General Counsel, U.S. Intern. Trade Commission, Washington, D.C., argued for defendants-appellants. With him on the brief were Lyn M. Schlitt, General Counsel and James A. Toupin, Asst. General Counsel.
 Arthur B. Wineburg, Cushman, Darby & Cushman, Washington, D.C., argued for defendant-appellant. With him on the brief was Marcia H. Sundeen.
 Before MAYER and MICHEL, Circuit Judges, and SMITH, Senior Circuit Judge.
 MICHEL, Circuit Judge.
 
 
 1
 The United States, the United States International Trade Commission (ITC), and the Tandy Corporation appeal the September 25, 1990 order of the United States Court of International Trade entering a preliminary injunction that bars Tandy's in-house counsel from gaining access to proprietary information disclosed by plaintiffs-appellees to the ITC in the course of an antidumping investigation, to which Tandy is a party. Matsushita, et al. v. United States, et al., 746 F.Supp. 1103 (Ct. Int'l Trade 1990). Because the court did not apply the correct statutory standard in reviewing the ITC's decision, and because the ITC's determination to allow access was based on a correct legal interpretation of the relevant statute and was not arbitrary, capricious, or an abuse of discretion, we reverse.
 
 BACKGROUND
 
 2
 This appeal arises from an antidumping petition, currently pending before the ITC and the Department of Commerce, concerning high-information content flat panel displays (FPDs). Matsushita Electric Industrial Co., Matsushita Electronics Corp., Matsushita Electric Corp. of America, and Hosiden Electronics Co. (collectively, "plaintiffs"), as well as Tandy, are parties to the proceeding.
 
 
 3
 On August 1, 1990, Herschel Winn, General Counsel of Tandy, filed an application with the ITC for release to him under an administrative protective order (APO) of business proprietary information disclosed to the ITC in the investigation, as provided for in 19 U.S.C. Sec. 1677f(c)(1)(A) (1988). The ITC granted Winn's APO application on August 2, 1990. On August 3, 1990 plaintiffs filed letters with the ITC objecting to Winn's receiving information under the APO in light of his roles as General Counsel, Senior Vice President and Secretary of Tandy. After reviewing plaintiffs' objections, the ITC affirmed its decision to give Winn access to the information.
 
 
 4
 Plaintiffs then filed an action with the Court of International Trade, seeking permanently to enjoin the ITC from allowing Winn access under the APO. Plaintiffs also moved for a temporary restraining order (TRO) and for a preliminary injunction. The court issued a TRO. After a hearing on August 15, 1990, the court orally stated that it was finding in favor of the plaintiffs and granting their request for a permanent injunction. In a written opinion issued September 25, 1990, however, the court stated that it was granting only a preliminary injunction, but nevertheless ordered that "the ITC is directed to strike Mr. Winn's name from the list of those eligible to receive confidential information" in the investigation. Matsushita, 746 F.Supp. at 1107. Thus, though it labeled its order a preliminary injunction, the court effectively granted the ultimate relief requested.
 
 
 5
 Tandy, the ITC and the government filed this appeal, over which we have jurisdiction pursuant to 28 U.S.C. Sec. 1295(a)(5) (1988). We shall treat the injunction on appeal as a permanent one.
 
 DISCUSSION
 
 6
 The issue presented in this appeal--whether the Court of International Trade correctly determined that the ITC's decision was arbitrary and capricious--is a question of law which we review de novo. See American Permac v. United States, 831 F.2d 269, 273 (Fed.Cir.1987), cert. dismissed, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988); Atlantic Sugar v. United States, 744 F.2d 1556, 1559 (Fed.Cir.1984). We thus review, in effect, the reasonableness of the underlying decision of the ITC itself. See American Permac, 831 F.2d at 273.
 
 
 7
 The statute governing dissemination of confidential information disclosed in the course of an ongoing antidumping investigation was amended by the Omnibus Trade and Competitiveness Act of 1988 (the "Trade Act") to state that
 
 
 8
 the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding ... available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding.
 
 
 9
 19 U.S.C. Sec. 1677f(c)(1)(A) (1988). The Conference Report on the Trade Act makes clear that the parties authorized to have access to confidential business proprietary information include both retained counsel and, under certain circumstances, in-house counsel: "In determining whether in-house counsel may properly be given access, Commerce and the ITC should be guided by the factors enumerated in United States Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984)." H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 623, reprinted in 1988 U.S.Code Cong. & Admin.News 1548, 1656. The legislative history thus indicates that Congress intended to adopt the standard for access to information set forth in our decision in U.S. Steel.
 
 
 10
 Similarly, the ITC's regulations regarding APO application procedures incorporate our U.S. Steel decision. The regulations specify that an "authorized applicant," from whom applications may be accepted, includes "[a]n in-house corporate attorney for an interested party which is a party to the investigation, if the attorney is not involved in competitive decisionmaking as defined in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984)." 19 C.F.R. Sec. 207.7(a)(3)(ii) (1990) (emphasis added).
 
 
 11
 In U.S. Steel, we held that access to confidential information could not be denied solely because of counsel's in-house status. 730 F.2d at 1469. Focusing on "the risk of inadvertent disclosure," we concluded that while that risk may in many cases be higher for in-house than for retained counsel, "[w]hether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined ... by the facts on a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained." Id. at 1468 (emphasis added). Although we made no ruling there, we noted that a request might properly be denied in a case "where in-house counsel are involved in competitive decisionmaking," id., a term we defined as
 
 
 12
 shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.
 
 
 13
 Id. at n. 3 (emphasis added).
 
 
 14
 Applying this legal standard to the facts of the instant case, the Court of International Trade accepted plaintiffs' arguments that Mr. Winn's activities in his three roles at Tandy--as General Counsel, Senior Vice President, and Secretary--involved him in "competitive decisionmaking." The court therefore entered an injunction forbidding disclosure, effectively overturning the ITC's decision. Entering this injunction was reversible error.
 
 
 15
 In the first place, the court did not apply the correct legal standard in reviewing the ITC's determination. The Court of International Trade reviews an ITC decision allowing information to be released to determine whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. Sec. 2640(d) (1988) (incorporating by reference 5 U.S.C. Sec. 706). The court purported to follow this deferential standard of review, beginning its analysis with the statement that "[f]or plaintiffs to ultimately succeed ... they must show that the action of the ITC in granting the APO to Mr. Winn was arbitrary and capricious, or an abuse of discretion." Matsushita, 746 F.Supp. at 1104. But the court's opinion, which makes de novo findings on the significance of Mr. Winn's activities and nowhere explains how the ITC acted arbitrarily and capriciously or abused its discretion, belies any deference to the ITC.
 
 
 16
 This failure to defer to the agency is particularly apparent since the court relied essentially on the same administrative record on which the ITC itself based its decision. This record, consisting of a short application and two letters, dated July 31 and August 7, from Herschel Winn to Kenneth R. Mason, the Secretary of the ITC, as well as two letters from counsel for the plaintiffs objecting to Winn's inclusion in the APO, was supplemented before the Court of International Trade with an affidavit from Mr. Winn. In all his filings, Winn described his duties at Tandy, emphasizing his isolation from competitive decisonmaking: "I am not involved in decisions of pricing and the technical design of a product," Letter from Herschel Winn to Kenneth R. Mason (July 31, 1990), Joint Appendix (Jt. App.) at 31; "My primary responsibilities are legal in nature and my administrative duties are in connection with employee benefit plans."; "I am not involved, nor do I become involved, in selection of vendors or the competitive business terms contained in these purchase orders."; "At [none of the meetings I attend] am I involved in decisions involving competing products or marketing strategies. These kind of decisions are made in Operation Meetings within the company which neither I nor my staff attend."; "My contact with the operating personnel at the factories and in the merchandising department, who make the marketing, purchasing and strategical [sic] decisions, is very minimal and is in the context of a legal problem or an employee benefit matter." Letter from Herschel Winn to Kenneth R. Mason (Aug. 7, 1990). Jt. App. at 46-50. These statements as to Mr. Winn's job responsibilities are entirely unrebutted by any other evidence in the record, and the ITC's letter rejecting plaintiffs' objections stated: "You have provided us with no basis for questioning the representations made by either counsel concerning their insulation from competitive decisionmaking."[1] Letter from Kenneth R. Mason to William H. Barringer (Aug. 7 1990), Jt. App at 54.
 
 
 17
 The ITC thus focused on the proper legal criterion under 19 U.S.C. Sec. 1677f(c)(1)(A) and 19 C.F.R. Sec. 207.7(a)(3)(ii): whether access under the APO would create an unacceptable "risk of inadvertent disclosure" because the applicant was involved in his company's competitive decisionmaking. Furthermore, assuming that Mr. Winn's unrebutted statements are true--and even the Court of International Trade stated that it "has no reason to, and does not here, doubt Mr. Winn's veracity," 746 F.Supp. at 1106--they form a reasonable basis for the ITC to conclude that Mr. Winn was sufficiently insulated from competitive decisonmaking that there was no "risk of inadvertent disclosure" sufficient to justify denying him access under the APO. The ITC's decision to grant access to him was therefore not arbitrary, capricious, or an abuse of discretion.
 
 
 18
 The Court of International Trade, apparently conducting a de novo review of the record, overturned the ITC's determination based on its own assessment that "Mr. Winn's established positions as Senior Vice President and Secretary do not adequately isolate him from the policymaking elements of the corporation so as to render the risk of inadvertent disclosure minimal." 746 F.Supp. at 1106 (emphasis added). The court found that his positions brought him into "regular contact" with executives who were "involved in day-to-day pricing and policy decisions," "in the context of what necessarily are competitive decisionmaking meetings." Id. (emphasis added). These findings are largely irrelevant, since the standard is not "regular contact" with other corporate officials who make "policy," or even competitive decisions, but "advice and participation" in "competitive decisionmaking." Moreover, the finding as to the nature of meetings Winn attended is directly contrary to Mr. Winn's own statements, which the court explicitly accepted as true. Hence, it is both non-deferential and contradictory.
 
 
 19
 It is a natural extension of the rule enunciated by this court in U.S. Steel that a denial of access sought by in-house counsel on the sole ground of status as a corporate officer is error. Indeed, the court's conclusion here even seems to suggest that general counsel are automatically to be denied access to confidential information merely because they have regular "contact" with those who are involved in competitive decisonmaking, a criterion which would disqualify almost all in-house counsel and thus effectively constitute the very per se rule we rejected in U.S. Steel.
 
 
 20
 The court's order entering an injunction must therefore be reversed. The injunction is to be dissolved forthwith and the ITC decision and APO granting access to Mr. Winn are to be reinstated.
 
 CONCLUSION
 
 21
 ITC's decision to grant access to proprietary business information to Tandy's inhouse counsel was in accordance with the statute and the regulations, properly interpreted in light of our decision in U.S. Steel, and was not arbitrary, capricious, or an abuse of discretion. The judgment of the Court of International Trade overturning that ITC decision is therefore
 
 
 22
 REVERSED.
 
 
 
 [1]
 The letter's reference to "either counsel" reflects the fact that the ITC decision addressed objections to disclosure to in-house counsel for Hitachi, Ltd. as well as to Mr. Winn. Only the disclosure to Mr. Winn is at issue in the instant case