THIS OPINION IS CITABLE
AS PRECEDENT OF THE T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

Mailed:  August 24, 2006

Opposition No. **91157923**

Georgia-Pacific Corporation
and Fort James Operating
Company

v.

Solo Cup Company

**Frances S. Wolfson, Interlocutory Attorney:**

On August 5, 2004, the Board imposed its standard protective order in this case.  On October 5, 2005, opposers filed a motion regarding the Board's standard protective order, presenting two distinct issues.  Opposers' motion has been fully briefed.

We have considered opposer's reply brief as it clarifies the issues before us.  See Trademark Rule 2.127(a).  We have also reviewed papers of the parties filed in regard to an earlier motion addressing the issue of in-house counsel's access to trade secret/commercially sensitive information, which is one of the issues presented by the current motion.

By the current motion, opposers seek (1) to have the Board modify the protective order so that opposers' in-house counsel is permitted access to trade secret/commercially sensitive information, and (2) to have the report of applicant's expert (the "Singh report") and Dr. Singh's discovery deposition reclassified by the Board as non-confidential.

## I. MODIFICATION OF THE PROTECTIVE ORDER TO PERMIT ACCESS BY IN-HOUSE COUNSEL

Under the terms of the protective order, information disclosed during discovery (other than non-confidential information) is classified as either "confidential," "highly confidential," or "trade secret/commercially sensitive."[1]

---

[1] Paragraph 1 of the protective order reads:

**1) Classes of Protected Information.**

The Rules of Practice in Trademark Cases provide that all inter partes proceeding files, as well as the involved registration and application files, are open to public inspection. The terms of this order are not to be used to undermine public access to files. When appropriate, however, a party or witness, on its own or through its attorney, may seek to protect the confidentiality of information by employing one of the following designations.

**Confidential**—Material to be shielded by the Board from public access.

**Highly Confidential**—Material to be shielded by the Board from public access <u>and</u> subject to agreed restrictions on access even as to the parties and/or their attorneys.

**Trade Secret/Commercially Sensitive**—Material to be shielded by the Board from public access, restricted from any access by the parties, and available for

2

The protective order allows both in-house and retained (outside) attorneys for the parties, "including support staff operating under counsel's direction, such as paralegals or legal assistants, secretaries, and any other employees or independent contractors operating under counsel's instruction," to have access to information designated as "confidential" or "highly confidential," but only retained attorneys are granted access to information designated as "trade secret/commercially sensitive."  In-house counsel are denied access to such information. Opposers seek modification of the protective order to enable their in-house counsel access to "trade secret/commercially sensitive" information.

### *Arguments of the Parties:  Access by In-house Counsel*

Opposers contend that applicant has over-designated certain documents it produced in discovery as "trade secret/commercially sensitive," and argues that while it would theoretically be possible for applicant to be required to sort through its production and re-designate those documents, some as "confidential" or "highly confidential," some as "trade secret/commercially sensitive," such an approach would be impractical and inefficient.  Opposers

---

review by outside counsel for the parties and, subject to the provisions of paragraph 4 and 5, by independent experts or consultants for the parties.

argue, instead, for modification of the protective order to provide in-house counsel access to all documents.[2]

Applicant takes the position that it has properly designated the documents it disclosed during discovery; that it reviewed "all of the 12,000+ documents it has produced and re-designated some;" and contends that the fact that there exist such a large number of documents designated as trade secret/commercially sensitive is "itself a clear indication that the protective order must not be modified" and illustrates that the nature of this proceeding is atypical for its large amount of sensitive information. Applicant further argues that the parties agreed to a "similarly restrictive protective order" in another case. Opposers reply that the facts at issue herein do not present a more complicated or compelling case for denying access to in-house counsel than in any other trademark dispute and that the parties' past proceedings have no relevance to this proceeding because they involved different subject matter.

### *Standard for Review:  Access by In-house Counsel*

Fed. R. Civ. P. 26(c)(7), made applicable to Board proceedings by Trademark Rules 2.120(a)[3] and (f),[4]

---

[2] We note opposers are not arguing for in-house counsel to have access to any privileged documents.

[3] Trademark Rule 2.120(a) provides:  "Wherever appropriate, the provisions of the Federal Rules of Civil Procedure relating to discovery shall apply in opposition, cancellation, interference and concurrent use registration proceedings."

explicitly authorizes the Board to protect parties from "undue burden or expense" in discovery by ordering "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."[5]

The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed. *Wright & Miller, Federal Practice & Procedure,* Chap. 6, § 2043 (2006).

---

[4] Trademark Rule 2.120(f) provides:

> Upon motion by a party from whom discovery is sought, and for good cause, the Trademark Trial and Appeal Board may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the types of orders provided by clauses (1) through (8), inclusive, of Rule 26(c) of the Federal Rules of Civil Procedure. If the motion for a protective order is denied in whole or in part, the Board may, on such conditions (other than an award of expenses to the party prevailing on the motion) as are just, order that any party provide or permit discovery.

[5] Rule 26(c) of the Federal Rules of Civil Procedure provides:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial

Although some courts have crafted a balancing test to determine if an adverse party's in-house counsel can access its confidential data, *see, e.g., Amgen, Inc. v. Elanex Pharm., Inc.,* 160 F.R.D. 1334, 137-38 (W.D. Wash. 1994), our primary reviewing court suggests that the determining factor in any analysis is whether in-house counsel is involved in its employer-litigant's "competitive decisionmaking."  See *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984).

In *U.S. Steel Corp.,* the court defined "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."

The court recognized that in-house counsel, like retained counsel, "are officers of the court, are bound by the same code of Professional Responsibility, and are subject to the same sanctions.  The problem and importance of avoiding inadvertent disclosure is the same for both." *U.S. Steel,* 730 F.2d at 1468.  Whether an unacceptable opportunity for inadvertent disclosure exists must be

---

information not be revealed or be revealed only in a designated way….

6

"determined by the facts on a counsel-by-counsel basis."
*Id.* Thus, in *U.S. Steel,* denial of access on the sole
ground of counsel's status as in-house counsel was
reversible error, as that access must be denied or granted
on the basis "of each individual counsel's actual activity
and relationship with the party represented." *Id.* at 1469.

Subsequent decisions of the courts, including that of
our primary reviewing court, have turned on the issue of
counsel's role as a "competitive decision-maker." The case
of *Matsushita Electric Industrial Co. Ltd. v. The United
States et. al.,* 929 F.2d 1577 (Fed. Cir. 1991) is
illustrative. In that case, the U.S. Court of International
Trade had determined that Mr. Herschel Winn, in-house
counsel for Tandy Corporation (defendant-intervenor) had
failed to show that he was not involved in competitive
decision-making. *Matsushita Elec. Indus. Co., Ltd. v. U.S.*,
746 F. Supp. 1103, 1106 (CIT 1990). Thus, the court denied
Mr. Winn access to confidential business proprietary
information submitted to or released by the International
Trade Commission during an investigation involving Tandy
Corp. *Id.* at 1107. The court relied upon Mr. Winn's
position as General Counsel, Senior Vice President and
Secretary of Tandy, and his purported regular contact with
competitive decision-making executives at Tandy during Board
of Directors and retail store meetings. *Id.* at 1106. The

7

court found that these factors created a risk of inadvertent disclosure that was unacceptable. *Ibid.*

Tandy Corp. successfully appealed the lower court's decision and Mr. Winn was permitted access to the information. *Matsushita,* 929 F.2d at 1581. Critical to the Federal Circuit's decision were statements in Mr. Winn's affidavit that he was not involved with the selection of vendors or the competitive business terms contained in any of their purchase orders, that he did not attend meetings where decisions about competing products or marketing strategies were made, and that his contact with operating personnel who make such decisions was minimal. The court determined that Mr. Winn did not engage in competitive decisionmaking at Tandy and permitted access to the disputed information. *Id.* at 1580.

We next turn to the issue of whether opposers' in-house counsel are engaged in "competitive decisionmaking" activities.

### *Opposers' In-House Counsel's Activities*

Regrettably, little insight has been provided by opposers as to the role, if any, their in-house counsel play in competitive decisionmaking activities. Opposers are seeking access on behalf of two in-house lawyers, their in-house assistants and a paralegal, plus any in-house lawyer

8

who would need to cover for either one of the initial two on an as-needed basis.

Opposers inform that their "in-house lawyers and paralegal working on this case are members of a 100+ member legal department of Opposers, which together employ over 55,000 people" and that they "are integral members of Opposers' litigation team and the ultimate decision makers in this proceeding; they possess key knowledge of the industry and the nature of the products." *Opposers' Brief June 17, 2004, p. 5; Reply brief November 14, 2005, p 6.* Opposers offer their assurances that any trade secret/commercially sensitive information will be safeguarded in the law office of opposers' in-house counsel, which is located on secure floors that cannot be accessed by opposers' business representatives, and that such counsel maintain a separate computer server. Finally, opposers have submitted a copy of a letter from opposers' outside counsel to applicant's counsel wherein outside counsel for opposers states that he would be willing to prepare a declaration for opposers' two in-house counsel stating that "they do not participate in business strategy except to provide legal advice." *Letter July 14, 2005.* Nothing in the record indicates that any such declarations were prepared however, and none have been filed.

Given this minimal showing, we are unable to conclude that opposers' in-house counsel are not involved in the competitive decisionmaking process at their employers. To allow access to applicant's trade secret/commercially sensitive information under such circumstances presents an unacceptable risk of inadvertent disclosure of such information. Accordingly, opposers' motion to modify the protective order, insofar as it seeks to allow in-house counsel to see all classes of protected documents, is hereby denied.[6]

## II. DESIGNATION OF DR. SINGH'S REPORT AND TESTIMONY TO PERMIT ACCESS BY OPPOSERS' IN-HOUSE TECHNICAL EXPERTS

---

[6] That is not to say that applicant has properly designated all 12,000+ documents it produced and that all those designated as trade secret/commercially sensitive deserve such designation. On the other hand, applicant has stated that it has re-designated documents, so opposers' in-house counsel should now have access to more documents. The parties are reminded that genuine trade secrets form a very narrow category of records. *See* Section 1(4) of the Uniform Trade Secret Act (UTSA), which defines a trade secret as:

> information, including a formula, pattern, compilation, program device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The Board notes that each of the states of the parties to this case (Georgia-Pacific Corporation is incorporated in Georgia, Fort James Operating Company is incorporated in Virginia, and Solo Cup Company is incorporated in Illinois) have adopted laws that follow this definition of a trade secret. *See* Ga. C.A. § 10-1-760 et seq. (1990); 765 ILCS § 1065/1, *et seq.* (1988); Va. C.A. § 59.1-336 (1986).

The second issue presented by opposers' current motion is also an "access" issue, but opposers do not propose, as they did in regard to the first issue, to modify any provision of the protective order itself. Rather, the second issue presented by the motion seeks a redesignation of materials produced in accordance with the provisions of the protective order.[7]

Applicant's expert, Dr. Singh, prepared a report ("the Singh report") on tests he conducted during the course of this proceeding, and opposers took Dr. Singh's discovery deposition regarding the report. Applicant designated some portions of the Singh report as confidential and other portions as highly confidential. Applicant designated all of Dr. Singh's discovery deposition as highly confidential.

Opposers now seek an order from the Board redesignating the report and deposition transcript as non-confidential. Applicant contends that both the report and transcript have been properly classified. Opposers argue that without the redesignation, their in-house technical experts are improperly restricted from viewing the Singh report and Dr. Singh's deposition transcript.[8]

---

[7] Redesignation of protected materials was a remedy, opposers argued, that would not efficiently resolve the first issue presented by the current motion.

[8] Under the terms of the protective order, "[p]arties and their attorneys shall have access to information designated as confidential or highly confidential, subject to any agreed exceptions." "Parties" are defined as "individuals, officers of

We will not describe the information contained in the report and transcript due to its nature, but presume the parties' familiarity therewith. Upon reviewing both the report and the transcript, it is clear that applicant has over-designated those portions of each that deal with Dr. Singh's credentials and background,[9] his involvement as an expert or witness in other matters, how he came to be a witness in this proceeding, the role his assistant played, whether other documents beside the Singh report were reviewed or prepared, information about other tests done outside the context of this proceeding, and knowledge of other persons and tests done outside the context of this proceeding.[10] This information is not confidential and need not be shielded from public view. As for the remainder, however, we believe it should be shielded from public access and therefore has properly been designated as either confidential or highly confidential.

---

corporations, partners of partnerships, and management employees of any type of business organization." Thus, opposers' technical experts who are not management employees or officers of either corporation may not access the Singh report and discovery deposition transcript.

[9] We note, for example, that applicant previously filed Dr. Singh's curriculum vitae with the Board (as an attachment to its response to opposers' motion to have the material redesignated as non-confidential). Accordingly, Dr. Singh's curriculum vitae is already of public record.

[10] This information is generally found on pages 1-38, 94-96, 107-108, of the deposition transcript. This is not meant to be an exhaustive list.

We recognize that this appears to leave opposer with a difficult choice: either retain an outside expert at this time, not knowing whether applicant intends to use any of the Singh report or take Dr. Singh's testimony deposition to introduce the report during its case-in-chief, or wait until applicant's testimony period closes to see if testimony is taken from Dr. Singh in regard to his report. In the latter case, opposers will have little time to retain an outside expert to assist it with its rebuttal testimony. However, we believe opposers' in-house technical experts should have access to the information contained in the Singh report and deposition in the event applicant decides to introduce any portion of the Singh report or take Dr. Singh's testimony deposition during its testimony period.

Therefore, to allow opposers a fair opportunity to prepare for cross-examination and rebuttal, applicant shall provide advance notice to opposers (no later than two weeks before the opening of applicant's testimony period) of any plans to take Dr. Singh's testimonial deposition to introduce the Singh report into evidence during applicant's testimony period. Absent receipt of such notice from applicant, however, opposers' in-house technical experts are denied access to the material. If, however, such notice is provided, then upon notice, opposers' in-house technical experts may access the Singh report and Dr. Singh's

13

deposition transcript, to help prepare counsel for cross-examination of Dr. Singh.

Before opposers' in-house technical experts may review the material, paragraph 4 of the protective order must also be followed.[11]  Paragraph 4 permits disclosure by "any party or its attorney" to other individuals so long as the party or attorney ensures that the individual to whom disclosure is being made is bound to the terms of the protective order in the same manner as the disclosing party or attorney.  We hold that under the circumstances herein, disclosure shall be made, if at all, by opposers' *in-house* counsel, who shall be responsible for ensuring that opposers' technical experts read and understand the protective order and that opposers' technical experts certify in writing that the individual has read and understood the order and acknowledges that its terms shall be binding on the individual.

---

[11] Paragraph 4 of the protective order provides as follows:
  **4) Disclosure to Any Individual.**
      Prior to disclosure of protected confidential or highly confidential information by any party or its attorney to any individual not already provided access to such information by the terms of this order, the individual shall be informed of the existence of this order and provided with a copy to read.  The individual will then be required to certify in writing that the order has been read and understood and that the terms shall be binding on the individual.  No individual shall receive any protected information until the party or attorney proposing to disclose the information has received the signed certification from the individual.  A form for such certification is attached to this order.  The party or attorney receiving the completed form shall retain the original.

### *SUMMARY*

Opposers' motion to modify the protective order to allow in-house counsel to access trade secret/commercially sensitive information is denied. Opposers' motion to redesignate the Singh report and Dr. Singh's deposition transcript as non-confidential is granted to the extent that information concerning Dr. Singh's credentials and background are designated as non-confidential; the rest of the report and deposition is designated as confidential or highly confidential. Opposers' in-house technical experts may access this confidential or highly-confidential information to assist opposers in preparing for their cross-examination of Dr. Singh and for any rebuttal testimony by an expert of opposers' choosing, following notice by applicant as provided herein. Paragraph 4 of the protective order shall be implemented by opposers' in-house counsel, as instructed herein.

We further hold that two weeks prior to the opening of opposers' rebuttal period, opposers shall disclose to applicant the identity of any expert they intend to call as a witness during their rebuttal period, and applicant shall be afforded an opportunity to take discovery of opposers' rebuttal expert witness, if any. Such discovery, however, should be taken expeditiously, so as not to delay rebuttal, and interrogatories and document requests should be promptly

15

served, narrowly tailored, and responded to promptly. Further, if opposers retain a testifying rebuttal expert witness sooner than two weeks prior to the opening of their rebuttal testimony period, then they must disclose the identity of the expert at that time, to facilitate expeditious taking of discovery by applicant in regard to the expert. We also note that any expert hired by either party for consulting purposes only need not be disclosed.

Trial dates are reset as indicated below.

| | |
|---|---|
| DISCOVERY PERIOD TO CLOSE: | **CLOSED** |
| 30-day testimony period for party in the position of plaintiff to close: | **November 30, 2006** |
| 30-day testimony period for party in the position of the defendant to close: | **January 29, 2007** |
| 15-day rebuttal period for party in the position of the plaintiff to close: | **March 15, 2007** |

**IN EACH INSTANCE,** a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within **thirty days** after completion of the taking of testimony. Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.