658 F.Supp.2d 615 (2009)
ISLAND INTELLECTUAL PROPERTY LLC, Lids Capital, LLC, Double Rock Corporation & Intrasweep LLC, Plaintiffs,
v.
PROMONTORY INTERFINANCIAL NETWORK, LLC, MBSC Securities Corporation, Deutsche Bank AG, Deutsche Bank Trust Company Americas & Total Bank Solutions LLC, Defendants.
No. 09 Civ. 2675(VM)(AJP).
United States District Court, S.D. New York.
November 18, 2009.
*616 Anthony F. Lo Cicero, Benjamin Charkow, Charles Robert Macedo, Norajean McCaffrey, Amster, Rothstein & Ebenstein LLC, New York, NY, for Plaintiffs.
Anthony J. Diana, Robert Dewitt Gilbert, Mayer Brown LLP, Washington, DC, Brandon Baum, Mayer Brown, LLP, Palo Alto, CA, Asheesh Paul Puri, Sidley Austin LLP, New York, NY, Edward Gerard Poplawski, Jeffrey A. Finn, Michael Christopher Lee, Olivia M. Kim, Sidley Austin LLP, Los Angeles, CA, for Defendants.

DECISION AND ORDER
VICTOR MARRERO, District Judge.

I. BACKGROUND

Plaintiffs, Island Intellectual Property LLC, LIDs Capital LLC, Double Rock Corporation and Intrasweep LLC (collectively, "Island"), brought this action alleging that Deutsche Bank AG, Deutsche Bank Trust Company Americas and Total Bank Solutions, LLC (collectively, "Deutsche")[1] infringed Island's patents relating to what the parties refer to as either "insured deposits" or "deposit sweep" financial services.
On August 19, 2009, Magistrate Judge Andrew Peck, to whom this matter has been referred for supervision of pretrial proceedings, orally denied Deutsche's request for a patent prosecution bar to be imposed on Island's lead counsel, Charles Macedo ("Macedo"). Deutsche moved Magistrate Judge Peck to reconsider the denial of its request. Both parties fully briefed the issue and on September 23, 2009, Magistrate Judge Andrew J. Peck issued an Opinion and Order (the "Opinion"), a copy of which is attached and incorporated herein, denying Deutsche's Motion for Reconsideration. Deutsche then filed objections to this Court challenging the Opinion's findings and conclusions. For the reasons stated below, the Court adopts the Opinion in its entirety.

II. STANDARD OF REVIEW

A district court evaluating a Magistrate Judge's order with respect to a matter not dispositive of a claim or defense may adopt the Magistrate Judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge with regard to such matters. Fed.R.Civ.P. 72(a); see also DeLuca v. Lord, 858 F.Supp. 1330, 1345 (S.D.N.Y. 1994).

*617 III. DISCUSSION

Deutsche objects to Magistrate Judge Peck's refusal to impose a "patent prosecution bar" against Macedo. The bar requested by Deutsche would prevent Macedo from prosecuting any patents in the area of "deposit sweep services" while the current lawsuit remains pending and for two years after the case is resolved.
The Court is not persuaded that Magistrate Judge's Peck decision was clearly erroneous. Patent prosecution bars are appropriate in some circumstances, but are not required when one party simply asserts that opposing counsel prosecutes patents involving the same technology at issue in a lawsuit. Instead, as Magistrate Judge Peck recognized, a court must examine the attorney's role in "competitive decisionmaking." U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed.Cir.1984); see also Phoenix Solutions Inc. v. Wells Fargo Bank. N.A., 254 F.R.D. 568, 580 (N.D.Cal.2008) (applying "competitive decisionmaking" test in ruling on patent prosecution bar). This analysis considers whether an attorney's "activities, association, and relationship with a client" involve participation in the "client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S Steel, 730 F.2d at 1468.
The Federal Circuit has also found that per se bars based on an attorney's general area of practice are not appropriate. In U.S. Steel, the Circuit Court held that the bare fact that an attorney was in-house counsel was not enough to prevent that attorney from accessing confidential information. See 730 F.2d at 1469.
Other courts have similarly disclaimed a per se patent prosecution bar based only on the fact that an attorney prosecutes patents. See, e.g., Sibia Neurosciences, Inc. v. Cadus Pharm., No. 96-1231, 1997 U.S. Dist. LEXIS 24130 (S.D.Cal. July 15, 1997), aff'd, In re Sibia Neurosciences, Inc., 132 F.3d 50, (Fed.Cir.1997) (unpublished table decision); Avocent Redmond Corp. v. Rose Elecs., Inc., 242 F.R.D. 574, 579 (W.D.Wash.2007).
However, a second line of cases has "concluded that patent prosecution is, by its very nature, a form of competitive decisionmaking because patent attorneys can control the nature and scope of a patented invention." Phoenix Solutions, 254 F.R.D. at 568 (citing In re Papst Licensing, MDL 1278, 2000 WL 554219, at *3 (E.D.La. May 4, 2000); Mikohn Gaming Corp. v. Acres Gaming Inc., 50 U.S.P.Q.2d 1783, 1784 (D.Nev.1998)). Magistrate Judge Peck's Opinion acknowledged but did not adopt the conclusion from these cases that patent prosecution inherently constitutes competitive decisionmaking, thereby supporting a finding that a prosecution bar is always appropriate against attorneys who prosecute patents.
Deutsche attempts to portray Macedo as a competitive decisionmaker by pointing to 14 appearances he has made on behalf of Island before the United States Patent and Trademark Office, his supervision of patent prosecution at Island, and his role as licensing and general intellectual property counsel at Island. In short, Deutsche argues that Macedo serves a vital role at Island as both de facto in-house counsel and patent prosecutor. The Court, however, finds that Deutsche has not established that Macedo participates in the activities "pricing, product design, etc."of a competitive decisionmaker. U.S Steel, 730 F.2d at 1468.[2]
*618 Having conducted a review of the full factual record in this litigation, including the pleadings, and the parties' respective papers submitted in connection with the Motion for Reconsideration below and in this proceeding, as well as the Opinion and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the recommendations made in the Opinion are not clearly erroneous or contrary to law and are thus warranted. To the extent there are two competing lines of jurisprudence in this area, the Magistrate Judge did not err in following one over the other. Accordingly, for substantially the reasons set forth in the Opinion, the Court adopts the Opinion in its entirety.

IV. ORDER

For the reasons discussed above, it is hereby
ORDERED that the Opinion and Order of Magistrate Judge Andrew Peck, dated September 23, 2009 (Docket No. 09 Civ. 2675), is adopted in its entirety, and the objections (Docket Nos. 63 and 75) of defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas, and Total Bank Solutions LLC to the Magistrate Judge's denial of a patent prosecution bar against Charles Macedo are DENIED.
SO ORDERED.
OPINION AND ORDER
ANDREW J. PECK, United States Magistrate Judge:
Presently before the Court is defendants' Motion for Reconsideration (Dkt. No. 47) of this Court's oral order at the August 19, 2009 conference, declining to impose a "patent prosecution bar" on plaintiffs lead trial counsel, Charles Macedo of Amster, Rothstein & Ebenstein LLP. (See Dkt. No. 46; 8/19/09 Conf. Tr. at 36-39.)
The Court has reviewed the parties' briefs and the cases cited therein, and adheres to its original decision.
The parties agree that the standard for deciding this issue was announced by the Federal Circuit in U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984). U.S. Steel, however, involved access of inhouse counsel to highly confidential information. The Federal Circuit stated that the "[d]enial or grant of access ... cannot rest on a general assumption that one' group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." U.S. Steel Corp. v. United States, 730 F.2d at 1468. Rather, the Federal Circuit held, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." Id. In a footnote, the Federal Circuit added:
The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.
Id. at 1468 n. 3. Subsequent court decisions as to whether to order a patent prosecution bar have focused on this "competitive decisionmaking" standard.
*619 While certain of the cases cited by defendants are easily factually distinguishable, a line of cases relying on the Motorola[1] decision would support defendants' position that a patent prosecution bar is appropriate. These cases, while disclaiming a per se rule, have held that "patent prosecution is, by its very nature, a form of competitive decision-making because patent attorneys can control the nature and scope of a patented invention," especially "if [patent counseling] relates broadly to the scope of a patented invention." Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 580 (N.D.Calif.2008) (relying on Motorola, citing cases).
As other decisions have noted, however, the approach of the Motorola line of cases really "amounts to a per se prohibition on the use of [outside] litigation counsel who also prosecute patents." See MedImmune, Inc. v. Centocor, Inc., 271 F.Supp.2d 762, 773-74 (D.Md.2003). As the MedImmune court explained, in language equally applicable here:
Nevertheless, the Court concludes that the Universities' argument amounts to a per se prohibition on the use of litigation counsel who also prosecute patents. Other than [attorney] Olstein's status as a patent prosecutor for MedImmune, the Court finds no other indicators that would warrant denying him access to confidential materials. MedImmune's proposed wording for the Protective Order will, therefore, be adopted.
The Universities correctly note that in-house counsel have already been denied access to confidential materials in this case. They have argued that Olstein, while not an employee of MedImmune, is effectively "in-house" counsel for MedImmune. The record does not support such a characterization nor does it support a conclusion that Olstein is a competitive decision-maker. No evidence has been proffered that Olstein participates in MedImmune's decisionmaking in relation to competitors in [the] biotechnology field. He does not apparently participate in product design, pricing or marketing. His law firm and MedImmune do not share employees. The Court views Olstein's role as one of patent prosecutor in the typical sense: he takes products that MedImmune has already-developed and brings them before the Patent Office. To adopt the Universities position would inexorably lead to the conclusion that no attorney, whether in-house or retained, could prosecute patents for a client while still working as litigation counsel for that client. Such a result would run contrary to Federal Circuit law.

Id. (emphasis added). A similar result was raised by the court in Sibia Neurosciences, Inc. v. Cadus Pharm. Corp., No. 96-1231, 1997 U.S. Dist. LEXIS 24130 (S.D.Cal. July 15, 1997), stating:
As a preliminary matter, there is no evidence that [attorney] DeConti's role with respect to Cadus is in any way comparable to that of an in-house attorney. He represents numerous biotechnology clients. Unlike the example referred to by the U.S. Steel court, there is no evidence that DeConti serves on Cadus's board of directors or that his firm has exchanged employees with Cadus. There is, in short, no evidence that DeConti's relationship to Cadus is anything other than a typical outside counsel relationship. Although DeConti's status as outside rather than in-house counsel is not dispositive, the Court finds it highly significant in view of the *620 fact that SIBIA has been unable to cite any case other than Motorola in which a court even considered entering a protective order that disqualified outside counsel.
More importantly, the uncontroverted testimony of the attorneys in this case establishes that none of the indicia of involvement in competitive decisionmaking noted by other courts are present here. DeConti has no involvement in product development, pricing, or market research. He does not advise Cadus with regard to competitive business decisions. His role is in the prosecution of patent applications for products that Cadus has already developed. There is no evidence that he provides Cadus "legal advice on a host of contract, employment, and competitive marketing decisions[;]" that he is involved in product design or development[;] or that he engages in scientific research, sales, or marketing. Thus, there is no evidence to support a conclusion that' this case presents a significant likelihood of inadvertent misuse of confidential information.
. . . .

SIBIA in effect advocates a per se rule that counsel who prosecute patents in a particular field should always be subject to disqualification by protective order from viewing confidential information produced in infringement or enforcement litigation concerning patents in that field. Under this rule, a patent holder or patent applicant would be precluded as a practical matter from retaining its outside patent counsel to defend it in an infringement action, as Cadus has done here, or to prosecute an enforcement action on its behalf[.] Clearly, none of the cases described above provides support for such a rule; indeed, the Fluke and Glaxo courts specifically rejected the conclusion that in-house patent counsel should be disqualified because they prosecuted patents. Furthermore, by uniformly permitting access by outside patent counsel, the cases impliedly reject the conclusion that patent prosecution per se presents an unacceptable risk of inadvertent disclosure. Finally, there is no factual support for such a conclusion in this case. DeConti testified that as outside patent counsel, he has knowledge of numerous clients' unpublished patent applications and is able to segregate this information.
1997 U.S. Dist. LEXIS 24130 at *21-24 (citations omitted, emphasis added).
Significantly, the Federal Circuit affirmed the district court's Sibia decision, albeit in an unpublished decision. In re Sibia Neurosciences, Inc., 132 F.3d 50 (table), 1997 WL 688174 (Fed.Cir. Oct. 22, 1997). The Federal Circuit stated that the "district court's order was well reasoned and discussed the relevant facts, rules, and cases. . . ." Id., 1997 WL 688174 at *3.
The Court emphasizes that here, Mr. Macedo is plaintiffs' lead trial counsel. (See Dkt. No. 46: 8/19/09 Conf. Tr. at 38.) To deprive him of access to defendants' "highly confidential" information would seriously prejudice plaintiff;[2] indeed, defendants do not seek such a restriction. To prevent Mr. Macedo from being involved in plaintiffs' future patent prosecution efforts for many years (defendants seek a patent prosecution bar while this case, including appeals, is pending, plus two years thereafter, see Dkt. No. 48: Defs. Br. at 2) also would highly prejudice plaintiffs (and Mr. Macedo himself, to the extent it would reduce his ability to earn a *621 living). Defendants have not provided sufficient information to the Court to support a prosecution bar for lead trial counsel Macedo;[3] while disclaiming it, they really are relying on a per se rule to exclude litigation counsel from also engaging in patent prosecution.

CONCLUSION
Other than by implicitly arguing for a per se rule preventing lead trial counsel Mr. Macedo from also engaging in patent prosecution, defendants have not made a sufficient factual showing as to why Mr. Macedo should be subject to a patent prosecution bar. Particularly here, where the attorney at issue is the lead trial counsel for the adversary, the Court will not impose a patent prosecution bar on him on this record. The Court adheres to its prior decision (see Dkt. No. 46) and denies defendants' Motion for Reconsideration (Dkt. No. 47).
SO ORDERED.
Dated: New York, New York.
September 23, 2009.
NOTES
[1] Island initially also sued Promontory Interfinancial Network, LLC and MBSC Securities Corporation, but those parties were removed from the lawsuit after Deutsche filed the current objection with this Court.
[2] Deutsche also argues that failing to impose a patent prosecution bar creates a conflict of interest for Macedo, whose duty to not disclose any confidential information learned during litigation competes with his duty of candor and good faith towards the Patent and Trademark Office imposed by 37 C.F.R. § 1.56. Deutsche further argues that the record did not support the Opinion's finding that Macedo's livelihood would be negatively impacted by a prosecution bar. The Court is not persuaded that either of these arguments presents clear error requiring reversal of the Magistrate Judge's Opinion.
[1] Motorola Inc. v. Interdigital Tech. Corp., No. Civ. A. 93-488, 1994 WL 16189689 (D.Del. Dec. 19, 1994).
[2] Plaintiffs have agreed that other "patent prosecution" counsel at Mr. Macedo's firm will not have access to defendants' highly confidential information. (8/19/09 Conf. Tr. at 37-38.)
[3] The only information before the Court is defendants' statement, in its brief, that "Mr. Macedo has personally appeared for [plaintiffs] before the United States Patent and Trademark Office (`PTO') on at least 14 separate occasions in connection with patent applications covering deposit-sweep services." (Defs. Br. at 3; see also id. at 4-5.)