GEN–PROBE INCORPORATED,
Plaintiff,

v.

BECTON, DICKINSON AND
COMPANY, Defendant.

Becton, Dickinson and Company,
Counterclaimant,

v.

Gen–Probe Incorporated,
Counterdefendant.

Civil No. 09cv2319 BEN (NLS).

United States District Court,
S.D. California.

April 28, 2010.

Alexander Enrico Long, Stephen P. Swinton, Latham and Watkins, San Diego, CA, Dean G. Dunlavey, Latham and Watkins LLP, Costa Mesa, CA, for Plaintiff.

Barbara Fiacco, Brian C. Carroll, Donald R. Ware, Foley Hoag LLP, Boston, MA, Boris Zelkind, Erik Anderson, Knobbe Martens Olson & Bear, San Diego, CA, for Defendant.

**ORDER GRANTING IN PART JOINT MOTION FOR PROTECTIVE ORDER TO DETERMINE PARTIES' DISPUTE REGARDING ISSUE NO. 2 IN THE PROTECTIVE ORDER**

NITA L. STORMES, United States Magistrate Judge.

Plaintiff Gen–Probe, Inc. (Gen–Probe) develops and sells nucleic acid tests and corresponding equipment used to detect disease-causing microorganisms and to screen donated human blood. Compl. ¶ 1. By incorporating its patented technology, the TIGRIS® System, Gen–Probe fully automated the process for blood screening. Compl. ¶ 4. Gen–Probe alleges that defendant Becton, Dickinson and Company (BD) and its "BD Viper™ with XTR™ Technology" nucleic acid testing system infringes U.S. Patent Nos. 7,560,256 ('256 patent), 7,560,255 ('255 patent), 7,524,652 ('652 patent), 7,482,143 ('143 patent), 7,118,892 ('892 patent) and 5,612,200 ('200 patent). Compl. ¶¶ 7–12, 16–39. It also alleges that BD's "BD ProbeTec™" DNA Assays infringe U.S. Patent Nos. 7,294,308 ('308 patent) and 6,893,612 ('612 patent). Compl. ¶¶ 13–14, 40–47. BD asserted counterclaims for declaratory judgment of invalidity against Gen–Probe's eight asserted patents.

The court held a Case Management Conference (CMC) on February 26, 2010. Following the CMC the court issued several rulings regarding scheduling and the parameters for discovery. It also ordered counsel to meet and confer regarding a joint proposed protective order to govern the production of documents in this case. Because the parties could not agree to all terms in the protective order, they filed this joint motion asking the court to determine two disputed terms in the protective order.

On March 11, 2010, the court issued an order explaining it had sufficient information before it to determine the first issue presented in the joint motion. It determined that first issue regarding the definition of "Highly Confidential" information in an order dated March 15, 2010. Also in the March 11 Order, the court set a schedule for further briefing of the second issue regarding Gen–Probe's proposed patent prosecution bar. In the second issue, Gen–Probe asks this court to implement a term to preclude all of BD's outside counsel from reviewing some of its "Highly Confidential" information, if that counsel engages in patent prosecution for any client in the area of "molecular diagnostics."

For good cause shown, the court **GRANTS in part** the joint motion to determine the second issue raised in the proposed protective order, denies without prejudice the request to impose a prosecution bar, and imposes a requirement that any as-of-yet undisclosed outside counsel who prosecutes patents or materially assists in the

prosecution of patents, before reviewing the opposing party's "Highly Confidential" information, disclose to the other side his or her involvement in patent prosecution.

*Issue # 2: Whether the Protective Order Should Include a Prosecution Bar on Persons Having Access to Information Designated "Highly Confidential."*

The parties disagree on whether to implement a patent prosecution bar on persons having access to certain categories of information designated "Highly Confidential."[1] Gen–Probe proposes to insert the following paragraph in the protective order while BD opposes insertion of this paragraph and imposition of a patent prosecution bar:

> Subject to the restrictions set forth in Paragraph 8 above, information designated "HIGHLY CONFIDENTIAL" may not be viewed by any person who is actively involved in, or materially assists others who are actively involved in, prosecuting patents in the technology area of molecular diagnostic tests and molecular diagnostic instrument systems (hereinafter the "Technology Area"). To ensure compliance with this provision, the parties shall create an ethical wall between those persons with access to information designated "HIGHLY CONFIDENTIAL" under this Order and those individuals who prosecute or materially assist others who prosecute patents in the Technology Area. In addition, any individual otherwise qualified to view information designated "HIGHLY CONFIDENTIAL" under the terms of Paragraph 8 and this Paragraph shall be barred from prosecuting or materially assisting others involved in prosecuting patents in the Technology Area for a period of two (2) years following the final termination of this action, including any and all appeals.[2]

### 1. Relevant Facts.

BD has retained two law firms to represent it in this matter, Foley Hoag LLP (Foley Hoag) in Boston, and Knobbe Martens Olson & Bear LLP (Knobbe Martens) as local counsel. Both firms have a patent prosecution practice. BD intends to use patent prosecutors at both firms to review discovery information. Swinton Decl. 1 ¶ 9. In their meet and confer efforts leading up to the filing of the joint motion, BD's counsel did not disclose to Gen–Probe's counsel how many and which defense counsel would be affected by Gen–Probe's proposed prosecution bar. Swinton Decl. 1 ¶¶ 11, 18. But BD disclosed that people at Knobbe Martens were actively prosecuting patents for a BD subsidiary in the field of nucleic acid tests and instrument systems. Swinton Decl. 1 ¶ 10. Boris Zelkind of Knobbe Martens did not specify which BD subsidiary or how many people at his firm were involved. *Id.*

According to the declarations of counsel, Foley Hoag has a prosecution practice that consists of approximately 16 attorneys and non-attorney technical specialists. Fiacco Decl. 1 ¶ 7. Foley Hoag is currently prosecuting hundreds of patent applications for at least eight clients in the field of molecular diagnostics, the area of technology that would be subject to the prosecution bar. Fiacco Decl. 1 ¶ 10. Knobbe Martens specializes in intellectual property law and has over 40 attorneys and non-attorney technical specialists who actively prosecute patent applications. Zelkind Decl. ¶ 5; Anderson Decl. 1 ¶¶ 4, 10. A large portion of its business stems from patent prosecution services in the biotechnology field, including prosecution in the area of molecular diagnostic tests and instrument systems. Anderson Decl. ¶¶ 5–8. Knobbe Martens has numerous clients whose research may be characterized as molecular diagnostic tests and instruments, and they

1. In response to the court's order, Gen–Probe offered to limit the scope of the proposed prosecution bar by allowing prosecution counsel to review subsections (a) and (c) in the definition of "Highly Confidential" information, which includes Gen–Probe's financial information. This would thus create a third category of information in the protective order, "Highly Confidential–No Prosecution Counsel." Given the ruling in this Order, Gen–Probe may, but is not required to, revise the definition of "Highly Confidential" information.

2. In supplemental briefing Gen–Probe proposes to decrease this time frame to within two years from the disclosure of such technical information or one year after the conclusion of the litigation, including any appeals, whichever is longer.

have represented some of these clients for several years. Anderson Decl. 1 ¶ 8.

Foley Hoag does not prosecute any patents for BD. Fiacco Decl. 1 ¶ 5. But its patent litigators rely heavily on the patent prosecutors as active members of litigation teams, and intend to rely on those members to analyze Gen–Probe's "Highly Confidential" information. Fiacco Decl. 1 ¶ 12. Foley Hoag explains that these team members "actively participate" and "materially assist" in prosecuting patent applications for clients in the field of molecular diagnostics. Fiacco Decl. 1 ¶ 12. Foley Hoag has represented BD in commercial litigation for decades. Fiacco Decl. 1 ¶ 3. BD has made a substantial investment in educating the Foley Hoag and Knobbe Martens teams concerning the subject matter of this litigation. Fiacco Decl. 1 ¶ 13; Anderson Decl. 1 ¶ 11.

None of BD's litigation attorneys of record for this matter, including Donald Ware, Barbara Fiacco and Brian Carroll of Foley Hoag, and Boris Zelkind and Erik Anderson of Knobbe Martens, are involved in BD's strategic decisions regarding product design or development, pricing, marketing or other competitive decisions. Fiacco Decl. 1 ¶ 5; Fiacco Decl. 2 ¶¶ 4–5; Anderson Decl. 1 ¶ 3; Anderson Decl. 2 ¶ 4; Russell Decl. ¶ 9; Sollins Decl. ¶ 6; Peaslee Decl. ¶ 5; Choi Decl. ¶ 9. While Mr. Zelkind is a member of the patent bar, he no longer prosecutes patents and focuses exclusively on intellectual property litigation.[3] Zelkind Decl. ¶ 2; Anderson Decl. 1 ¶¶ 3–4; Swinton Decl. 1 ¶ 18. Mr. Ware, Ms. Fiacco and Mr. Carroll are not members of the patent bar; however they consult with clients regarding issues arising during patent prosecution that affect pending or potential patent litigation, such as disclosure of material to the United States Patent and Trademark Office (Patent Office). Fiacco Decl. 1 ¶ 6.

Knobbe Martens prosecutes patents for two BD subsidiaries, HandyLab, Inc. and GeneOhm Technology. Anderson Decl. 2 ¶¶ 8, 10. The court separately addresses the issues involved with the BD subsidiaries later in this Order.

### 2. *Applicable Law.*

▅▅▅ When deciding whether one side's patent prosecutor should have access to the opposing party's confidential information, courts must balance the "one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors." *Avocent Redmond Corp. v. Rose Electronics,* 242 F.R.D. 574, 577 (W.D.Wash.2007) (citing *U.S. Steel Corp. v. U.S.,* 730 F.2d 1465, 1468 (Fed.Cir.1984)). The key inquiry is whether the attorney in question is in fact a competitive decision maker. *Id.* (citing *U.S. Steel Corp.,* 730 F.2d at 1470). The court must also balance the risk of inadvertent disclosure of confidential information to competitors against the risk of impairment of litigation. *See, e.g., Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons, LLS,* 1999 WL 618969, *1, 1999 U.S. Dist. LEXIS 12437, *2 (N.D.Ill.1999).

### A. Majority View.

▅▅▅ In the majority view, where a company's patent prosecutor also engages in competitive decision making for that company, the prosecutor must be barred from accessing the opposing party's confidential information. *See, e.g., Motorola, Inc. v. Interdigital Technology Corp.,* 1994 WL 16189689, 1994 U.S. Dist. LEXIS 20714 (D.Del.1994) (prohibiting outside counsel who already received plaintiff's confidential information from prosecuting patents for defendant for one year after litigation ended); *Infosint S.A. v. Lundbeck,* 2007 WL 1467784, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y.2007) (imposing bar where plaintiff's attorney was making decisions regarding competitors and assisting in the prosecution of the patents-in-suit). In some cases, the fact that an attorney engages in patent prosecution is sufficient to find that the attorney is also a competitive decision maker for the party: "Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] project[s] sales to be most critical.' "

---

[3]. Likewise, both Mr. Swinton and Mr. Long, counsel to Gen–Probe, are admitted to practice before the Patent Office but no longer prosecute patents. Swinton Decl. 1 ¶ 18.

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1196965, *2, 2004 U.S. Dist. LEXIS 12782, *8 (D.Del.2004) (barring plaintiff's attorneys from accessing defendant's highly confidential information because they were prosecuting patents involving the technology at issue) (quoting *Motorola*, 1994 WL 16189689, *2–3, *4, 1994 U.S. Dist. LEXIS 20714 at *7–*8, *11); *In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 6374 (E.D.La.2000) (defining advice related to patent prosecution as competitive decision making); *Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D.Cal.2003) (defining advice on the scope of patent claims as competitive decision making).

In other cases, courts have made more specific findings regarding patent prosecution and other factors, including who is the attorney at issue, the attorney's relationship with the party, and the specific type of prosecution work undertaken for that client, to show that the attorney is a competitive decision maker. *See, e.g., Methode Electronics, Inc. v. DPH–DAS LLC*, 679 F.Supp.2d 828 (E.D.Mich.2010) (finding risk that plaintiff's attorney could inadvertently apply the defendant's information to shape claims for plaintiff in then-pending continuation proceedings for the patents at issue and make claims "read" on new products rendered him a competitive decision maker); *Presidio Components, Inc. v. Amer. Technical Ceramics Corp.*, 546 F.Supp.2d 951, 958 (S.D.Cal.2008) (Stormes, J.) (imposing prosecution bar for plaintiff's prosecution attorney who worked at same firm as litigation team because he would be involved in decisions concerning scope and emphasis such as drafting claims to read on new products and new directions where sales were projected to be more critical); *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 580 n. 3 (N.D.Cal.2008) (entering prosecution bar for plaintiff's patent prosecutor who functioned as an in-house counsel with authority to make competitive business decisions even though plaintiff and defendant were not direct competitors).

## B. Minority View.

Under the minority view, patent prosecution, on its own, is insufficient to qualify an attorney as a competitive decision maker. *In re Sibia Neurosciences, Inc.*, 132 F.3d 50 (Fed.Cir.1997). The minority view cases rely on *In re Sibia* for the rule that no prosecution bar should be entered for patent prosecutors unless there is other specific evidence that the attorney is a competitive decision maker. *See, e.g., Avocent*, 242 F.R.D. 574 (allowing plaintiff's prosecutors access to defendant's confidential information because defendant showed only a "vague and generalized threat of future inadvertent misuse of discovered materials"); *Island Intellectual Prop. LLC v. Promontory Interfinancial Network*, 658 F.Supp.2d 615 (S.D.N.Y.2009) (finding counsel did not participate in activities such as pricing and product design and thus was not a competitive decision maker); *Greenstreak Grp., Inc. v. P.N.A. Construction Technologies, Inc.*, 251 F.R.D. 390 (E.D.Mo.2008) (finding outside counsel were not involved in pricing and product design and thus were not competitive decision makers); *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg. Inc.*, 2006 WL 47374, 2006 U.S. Dist. LEXIS 426 (E.D.Penn.2006) (finding the threat of inadvertent use of defendant's confidential information, on its own, is not enough to justify barring plaintiff's attorneys from prosecuting similar patents for two years); *Pergo, Inc. v. Faus Grp., Inc.*, 401 F.Supp.2d 515 (E.D.N.C.2005) (finding counsel did not advise on product pricing, design, invention, research, development, marketing or sales and thus was not a competitive decision maker).

■ This court has already rejected the minority view and distinguished *In re Sibia* on the grounds that it was decided before the significant post-*Motorola* line of cases. *See Presidio*, 546 F.Supp.2d at 958. While *In re Sibia* is a Federal Circuit case and a patent prosecution bar is unique to patent law, several other courts have rejected *In re Sibia* because it is an unpublished case. *See, e.g., Phoenix Solutions*, 254 F.R.D. at 580 n. 3. Further, this issue arises in the context of the appropriate scope of a protective order. Fed. R. Civ. Proc. 26(c). Where issues of patent law control disposition of a discovery dispute, the court must apply Federal Circuit

law. *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed.Cir.1999). Here, however, the precedential effect of *In re Sibia* is disputed, and the appropriate scope of a protective order is a matter generally committed to the sound discretion of the district court. *See* Fed.R.Civ.P. 26(c); *Phillips v. GMC,* 307 F.3d 1206, 1211 (9th Cir. 2002).

### C. Cases Addressing Scope of Prosecution Bar.

Some of the cases that enter prosecution bars limit the bar to either only those patents at issue in the litigation, or to any of the litigating party's patents related to the patents-in-suit. *See, e.g., Interactive Coupon Mktg. Group,* 1999 WL 61896, *3–4, 1999 U.S. Dist. LEXIS at *11 (barring plaintiff's counsel from prosecuting "any patent application for plaintiff relating to the subject matter of the patents-in-suit"). Other cases have expanded the scope of the prosecution bar to apply not only to patents belonging to the litigating parties, but to counsel's other clients who may have patents related to the technology at issue. *See, e.g., Commissariat,* 2004 WL 119696, *2, 2004 U.S. Dist. LEXIS at *8 (barring plaintiff's attorneys from accessing defendant's highly confidential information because they were prosecuting patents involving the LCD technology at issue for defendant's competitors); *Medtronic, Inc. v. Guidant Corp.,* 2001 WL 34784493, 2001 U.S. Dist. LEXIS 22805, *11 (D.Minn.2001) (barring attorneys who received "Outside Attorneys Eyes Only" information from participating for one year in prosecuting patents "for inventions related to the treatment of abnormal cardiac rhythms"); *Cummins–Allison Corp. v. Glory Ltd.,* 2003 U.S. Dist. LEXIS 23653, *34–*35 (N.D.Ill.2004) (barring counsel from prosecuting "any patent application relating to the subject matter of the patents-in-suit").

Rather than focus the restriction on patent prosecutors, some courts have imposed the bar on patent litigators where those litigators also advise patent prosecutors regarding issues in prosecution. *See, e.g., Cheah IP LLC v. Plaxo, Inc.,* 2009 WL 1190331, *2, 2009 U.S. Dist. LEXIS 40823, *5–*6 (N.D.Cal. 2009) (rejecting argument that litigators were not competitive decision makers based on litigators providing assistance to patent prosecutors for patents related to patents-in-suit); *c.f. Nazomi Communications, Inc. v. Arm Holdings PLC,* 2002 WL 32831822, 2002 U.S. Dist. LEXIS 21400 (N.D.Cal.2002) (finding litigators were not competitive decision makers based on their firm's general patent prosecution practice because the firm did not prosecute patents for plaintiff).

### 3. *Prosecution Bar.*

This court must decide whether the BD attorneys who prosecute or materially assist others who prosecute patents in the area of molecular diagnostic tests and instrument systems *for any client* should be prohibited from reviewing Gen–Probe's most confidential technical information. Gen–Probe argues that BD's counsel should be forced to make a choice: either litigate this case or prosecute patents involving molecular diagnostic tests and instrument systems, but not both. Gen–Probe asks this court to impose a prosecution bar like it did in *Presidio,* 546 F.Supp.2d 951. While the issue raised here bears certain similarities to the issue presented in *Presidio,* there are important differences. In *Presidio,* plaintiff's litigation counsel had also prosecuted the parent patent and the patent-in-suit. Consequently, there was an appreciable risk that sensitive information received from the defendant might unintentionally be used in prosecuting on-going patent applications for the plaintiff. Here, the risk is less apparent, as litigation counsel and prosecution counsel at the defendant's two law firms do not prosecute any patents for BD. They do, however, prosecute patents for other clients, including subsidiaries of BD, in the same general area of technology.

Gen–Probe argues that a patent prosecution bar will create a level playing field for all parties because its lawyers will also be subject to the prosecution bar. Gen–Probe will look to non-prosecuting attorneys or outside consultants for consultation on this litigation. Gen–Probe argues there is good cause to impose the bar based on the substantial evidence it provided in the joint mo-

tion of BD copying GenProbe's patent submissions by prosecution counsel acting under BD's control. Gen–Probe argues the risk of inadvertent disclosure of its most guarded information is far outweighed by any burden imposed on BD in this case.

BD advances several arguments against imposition of the prosecution bar. First, it argues it will be unfairly prejudiced if it cannot disclose Gen–Probe's "Highly Confidential" information to patent prosecution counsel so as to use their technical expertise to help with this litigation. Second, it argues the proposed bar is unnecessary, and in any event is too broad in scope and duration because it would apply to any current or future client of Foley Hoag or Knobbe Martens, and would restrain their attorneys from pursuing their own career opportunities in patent prosecution in the life sciences and future in-house counsel positions for years to come. Third, BD argues that Gen–Probe has not demonstrated any risk that its "Highly Confidential" information will be used by BD's outside litigation counsel to prosecute patents to the prejudice of Gen–Probe. Fourth, BD argues that the ethics rules governing attorneys, including the California Rules of Professional Conduct, eliminate any concern that BD's litigation counsel will use Gen–Probe's "Highly Confidential" information to further its representation of any unspecified third-party competitors in patent prosecution matters. Finally, BD argues that Gen–Probe has not provided any reason why it requires greater protection than any former client of Foley Hoag or Knobbe Martens receives.[4]

### A. Good Cause.

In the initial joint motion, Gen–Probe explained it became concerned, when in the meet and confer, Mr. Zelkind disclosed that attorneys in his firm were currently prosecuting patents for a BD subsidiary in the same technology area. Mr. Zelkind, howev-

er, did not disclose any details regarding the people involved or their involvement, if any, in this lawsuit. Swinton Decl. 1 ¶ 10. Mr. Ware, likewise, refused to disclose how many of his colleagues were engaged in similar activities. Swinton Decl. 1 ¶ 11. Further, Gen–Probe explains that of the approximately 26,000 documents it produced evidencing the conception, reduction to practice, design and development of each claimed invention, it designated only 56 documents as "Highly Confidential" that would be subject to the bar. Gen–Probe asserts that those documents are "exemplary invention documents that contain detailed molecular chemistry disclosures regarding the design of the molecular diagnostic assays running on its TIGRIS commercial embodiment" and are "inherent in the invention and reduction to practice of Gen–Probe's automation patents." Swinton Decl. 2 ¶ 7.

The failure of BD's counsel to discuss more details of their patent prosecution practices, coupled with the proprietary value of the information in the documents at issue, constituted good cause to order BD's counsel to provide further information regarding it patent prosecution practices.

### B. Competitive Decision Making.

Gen–Probe argues that by virtue of their prosecuting patents for Gen–Probe's competitors in the same technology area, patent prosecutors at Foley Hoag and Knobbe Martens engage in competitive decision making. Gen–Probe cites to many cases, including this court's decision in *Presidio,* where a company's outside counsel involved in patent prosecution are competitive decision makers who should either choose to prosecute patents or participate in the litigation. Gen–Probe argues that a patent prosecutor cannot effectively separate, in his or her mind, a competitor's confidential information obtained through discovery from the strategic

4.  BD argues that even though Gen–Probe has not shown good cause to implement the patent bar, this court has shifted the burden to BD by requiring it to submit declarations from outside counsel justifying why the bar should not be imposed. This court has not alleviated Gen–Probe of the burden under Rule 26(c) to show good cause.

Rather, the court ordered production of information that Gen–Probe had requested but that BD refused to produce. This information was relevant to Gen–Probe's argument for good cause and necessary to the court's consideration of whether Gen–Probe met its burden.

business decisions a prosecutor must engage in for the benefit of a client.

■ Considering the risk that patent prosecutors from Foley Hoag and Knobbe Martens could inadvertently apply Gen–Probe's information to shape claims for its competitors in patent prosecution proceedings for patents related to the technology at issue, if based on a supporting factual record, those patent prosecutors would be competitive decision makers. However, without further information as to who, exactly, those prosecutors are, and which patent applications they are prosecuting for which clients, the court cannot affirmatively find that the collective and unknown group of patent prosecutors at Foley Hoag and Knobbe Martens working on unknown patents are competitive decision makers.

■ To build a factual record, Gen–Probe asked for the identifications of the companies for which Foley Hoag and Knobbe Martens prosecute patents in the technology area. Swinton Decl. 2 ¶ 3. In response, Foley Hoag provided Gen–Probe a representative list of its molecular diagnostics clients. *See* Fiacco Decl. 2, Ex. A. Knobbe Martens disclosed a BD subsidiary, but not a list. Swinton Decl. 2 ¶ 3. Gen–Probe asked this court to order BD's counsel to disclose their client lists so as to discover any competitors. Based on BD's expressed concerns regarding client confidentiality, such as disclosure of clients working on new and unpublished patents, the court will not order BD to disclose those lists.

Gen–Probe also asks that BD disclose which patent prosecutors it will rely on for this litigation. Regarding attorneys, BD cannot yet identify with certainty which attorneys it will rely on because the case is in its initial stages, and counsel is not yet aware of the staffing needs required to review "Highly Confidential" information, the role that each attorney will fulfill, or whether any specific attorney will be indispensable to the litigation team. Fiacco Decl. 2 ¶¶ 6–7. Also, BD's counsel needs flexibility in its staffing to address events that will inevitably occur over the length of a long patent case, such as medical and parental leave, trials, and other professional and personal commitment. Fi-

acco Decl. 2 ¶ 8; Zelkind Decl. ¶ 6. Further, BD's counsel argues it cannot anticipate their staffing needs because this is a large case with eight asserted patents naming fifteen inventors, and there now also exists a second case filed by Gen–Probe involving some of the same patents and accusing different BD products, and due to the largess of these cases both firms require flexibility in staffing. Zelkind Decl. ¶¶ 6–8; Fiacco Decl. 2 ¶¶ 6–9. Notwithstanding these objections, Foley Hoag disclosed certain of its attorneys who may be staffed on this case. These Foley Hoag associates explained that none of the technical areas of their prosecution work involve automation, automated devices or penetrable caps similar to the technology asserted in Gen–Probe's patents. Russell Decl. ¶ 7; Sollins Decl. ¶ 4; Choi Decl. ¶ 7; Anderson Decl. 2 ¶¶ 6, 12.

Based on these disclosures, Gen–Probe does not challenge any of the identified Foley Hoag associates—Kimberly Peaslee, Hathaway Russell, Peter Sollins, and technical specialist Peter Choi—or argue they are competitive decision makers who should be prevented from reviewing Gen–Probe's "Highly Confidential" information. Further, based on the representations of BD's counsel, Gen–Probe does not believe that BD's principal trial counsel, Mr. Ware, Ms. Fiacco and Mr. Carroll, or its principal local counsel, Mr. Zelkind, prosecute patents or materially assist others in the prosecution of patents, and thus does not seek a prosecution bar against them. Gen–Probe Reply, pp. 1, 9–10.

Based on this record, the court finds that there is not enough evidence to make a finding that Foley Hoag's and Knobbe Martens' unidentified patent prosecutors working on unspecified patents for unidentified clients are competitive decision makers.

### C. Balancing Test.

■ The courts now employs a balancing test that weighs the risk of inadvertent disclosure of a party's most confidential information against the opposing party's ability to litigate. *See, e.g., In re Papst Licensing, GmbH, Patent Litig.,* 2000 U.S. Dist. LEXIS 6374 (E.D.La.2000) (restricting Papst's coun-

sel because risk of inadvertent disclosure outweighed any impairment on Papst's ability to litigate). Gen–Probe argues it will suffer prejudice because it faces a risk of inadvertent disclosure of its confidential information to undisclosed competitors other than BD. In contrast, BD argues it will suffer prejudice to its ability to litigate this case because its technically knowledgeable counsel would be precluded from further assisting BD. Fiacco Decl. 1 ¶ 12. BD's representation would suffer and its choice of counsel would be unduly prejudiced. Zelkind Decl. ¶ 7.

BD's counsel argues a prosecution bar will cause the law firms and their clients severe prejudice. For example, BD's outside counsel has an undivided duty of loyalty to each of its clients. *See Flatt v. Superior Court,* 9 Cal.4th 275, 289, 36 Cal.Rptr.2d 537, 885 P.2d 950 (1994). If Gen–Probe's prosecution bar is imposed, BD's counsel argues it would be forced to violate that duty of loyalty and choose between their clients. If the bar is imposed, for example, Foley Hoag and Knobbe Martens may decide that they prefer to prosecute patents for several other clients in the technology area rather than litigate this case, so they would be forced to withdraw as counsel for BD, which could prejudice BD. Or, Foley Hoag and Knobbe Martens may choose to litigate this case and abandon some of its patent prosecution activities, which could deprive their patent prosecution clients of their choice of counsel and prejudice them in their proceedings. Also, by imposing the prosecution bar, counsel argues that Gen–Probe would receive more protection of its confidential information than Foley Hoag's or Knobbe Martens' clients, as both firms prosecute patents for multiple clients in this technology area without any limitation on their representation. If those clients—including BD—to which Foley Hoag and Knobbe Martens owe a duty of loyalty, have not asked either of those firms to give

up prosecuting patents for other competitors in the same area of technology, BD argues it would be unfair to ask those firms to selectively eliminate their clients for the benefit of Gen–Probe, to which those firms do not owe a duty of loyalty.[5]

Second, BD's counsel argues that such a bar could violate California Rule of Professional Conduct 1–500, which prohibits any agreement that restricts an attorney's ability to practice law. *See also Nazomi,* U.S. Dist. LEXIS at *8–*9 (presuming attorneys can abide by both terms of a protective order and the Rules of Professional Conduct and only barring access where there is a significant danger of inadvertent disclosure). If the bar is considered a covenant not to compete, it may be found unenforceable. *See* Hricik Decl. ¶ 38.

Third, the bar could derail the careers of Foley Hoag's newer associates. For example, Foley Hoag uses a contract attorney who has a Ph.D. in biophysical chemistry and who focused her graduate work on molecular diagnostics. Peaslee Decl. ¶ 3. She became a member of the Massachusetts bar in January 2010. Peaslee Decl. ¶ 2. She intends to develop a legal career that includes patent prosecution, which may include work in the area of her education, molecular diagnostics. Peaslee Decl. ¶ 6. If subject to the prosecution bar, she would be precluded from working, for what would likely be a substantial period of time, in her area of education. Peaslee Decl. ¶ 7.

In light of these ethical and career-impacting concerns, the court finds that BD's outside counsel would be prejudiced by imposition of the broad prosecution bar, and that such prejudice would additionally flow to BD.

### D. Scope of Technology in Prosecution Bar.

Gen–Probe and this court asked BD to propose a limit to the prosecution bar. As

---

5. BD explains that ethical obligations prevent prosecution attorneys from taking on future representation in a subject matter that bears a "substantial relationship" to the technology at issue in a prior or current client relationship. Hricik Decl. ¶ 30. BD's expert opines that courts construe the "substantial relationship" requirement narrowly to protect the livelihoods of prosecuting attorneys as well as their abilities to practice law. *Id.* The Patent Office has held that to be substantially related, two patents must be at least "substantially identical." Hricik Decl. ¶ 33; *Anderson v. Eppstein,* 59 USPQ 2d. 1280 (Bd. Pat.App. & Interf. May 11, 2001). Consequently, firms can represent multiple clients in the same space without conflict or risk of misuse of confidential information. Hricik Decl. ¶ 30.

first proposed, Gen–Probe seeks to impose the bar on all patent prosecutors at Foley Hoag and Knobbe Martens who work in the area of molecular diagnostics. Molecular diagnostics includes all of the tests and methods to identify a disease or predisposition for a disease through analysis of an organism's molecules, such as DNA or RNA. Fiacco Decl. 1 ¶ 8. Some of the current and emerging applications of molecular diagnostics include personalized medicine (i.e. custom treatment for a specific disease in a patient), oncology (diagnostic and personalized medicine tests), antibodies, genetic testing for inherited disorders and prenatal diagnosis, and predicting genetic risk of disease. Fiacco Decl. 1 ¶ 9. BD contends the asserted patents, however, relate to only a narrow aspect of molecular diagnostics, specifically, a fully automated stand-alone instrument for isolating, amplifying and detecting nucleic acids and the penetrable caps for use with that instrument, and implies that any bar should be limited to this definition. Based on this definition, BD asserts that the subject matter of the patents-in-suit is not relevant to any molecular diagnostics patents currently being prosecuted by prosecutors at Foley Hoag or Knobbe Martens. BD Response, p. 8.

Gen–Probe replies that BD's narrowed definition does not account for all the claims asserted in these "automation" patents, which claim the molecular chemistry steps of "hybridizing," "amplifying," and "detecting" a target nucleic acid sequence. Swinton Decl. 2 ¶ 6. Gen–Probe points out that in BD's 196–topic document request it served on Gen–Probe on March 29, 2010, BD's demands went beyond any "mechanical" subject category and demonstrates BD's real belief regarding the technology at issue:

> All documents concerning the testing, manufacture, use, sale or offer for sale of the TIGRIS Instrument, including all engineering notebooks, notes, memoranda, correspondence, e-mails, prototypes, engineering change orders, bills of material, research reports, development proposals, project approvals, project summaries, new product disclosures or proposals, drawings, sketches, schematics, models, computer models, simulations, manufacturing specifications or protocols, testing specifications or protocols, technical manuals, product manuals, service manuals, operation manuals, samples, presentations, data files, meeting minutes, diaries, calendars, publications, product specifications, product development documents, theory of operation documents, failure modes and effects documents, and any other design and technical documents.

Swinton Decl. 2 ¶ 8.

Based on this conflicting information, and the lack of an independent expert opinion that might help define the scope of the technology at issue, the court will not impose a more narrowly-tailored version of the prosecution bar.

### 4. *Ethical Wall.*

The parties acknowledge that Knobbe Martens prosecutes patents for a BD subsidiary, HandyLab, Inc. Neither Mr. Zelkind nor Mr. Anderson works on patent prosecutions for that client. Anderson Decl. 2 ¶ 10. Knobbe Martens plans to implement an ethical wall in the firm before receiving any Gen–Probe "Highly Confidential" documents in this case by restricting access to those documents only to people staffed on the case. *Id.* Any person staffed on the case will first be vetted to confirm that he or she does not work on patent prosecution for any patent applications owned by HandyLab. *Id.* Any person staffed on this case will be excluded from helping prosecute HandyLab patent applications. *Id.*

Knobbe Martens also prosecutes patents for another BD subsidiary, GeneOhm Technology. Mr. Anderson used to prosecute patents for them but is no longer responsible for that patent prosecution. Anderson Decl. 2 ¶ 8. He does, however, occasionally help the prosecuting attorneys because of his familiarity with the technology and experience prosecuting applications for these patent families. Anderson Decl. 2 ¶ 8. While these patents can be considered to be within the area of molecular diagnostics, he says they do not relate to the subject matter of the patents asserted here because they do not cite to the Gen–Probe patents at issue as prior art. Anderson Decl. 2 ¶ 9. If, upon further investi-

gation, these patents are found to relate to the patents at issue, Knobbe Martens shall also implement an ethical wall between the GeneOhm patent prosecutors and the attorneys assigned to this case.

***Conclusion and Order.***

The court finds that Gen–Probe has presented good cause for a legitimate concern that its "Highly Confidential" information will be put at risk of inadvertent disclosure to potential competitors in the field of molecular diagnostics. Because Gen–Probe does not have an attorney-client relationship with the Foley Hoag or Knobbe Martens firms, it cannot benefit from the same protections and conflict checking mechanisms those clients receive, and consequently it cannot provide informed consent to disclosure of its confidential information. While Gen–Probe has not shown that the collective group of patent prosecutors at Foley Hoag and Knobbe Martens working for unidentified clients in unknown areas of patent prosecution are competitive decision makers, it did not have the tools to make such a showing because Foley Hoag and Knobbe Martens understandably declined to provide that information to Gen–Probe.

On the other hand, the Foley Hoag and Knobbe Martens firms would suffer prejudice if the court ordered them to disclose their client lists and patent prosecutions to Gen–Probe so that Gen–Probe could make a factual record to support its argument to impose the patent prosecution bar. Also, if the court imposed the prosecution bar, BD would be prejudiced in its ability to litigate this case with its chosen counsel. BD would also suffer from the downflow of prejudice that would be imposed on the Foley Hoag and Knobbe Martens firms, as the careers of their attorneys, areas of expertise and client relationships could be adversely impacted by imposition of the bar.

Recognizing the potential prejudice to both sides, this court attempts to strike the appropriate balance by imposing the following requirement:

To provide further assurances to Gen–Probe that its "Highly Confidential" information is not being freely passed around to all patent prosecutors at Foley Hoag and Knobbe Martens, and to provide a record to Gen–Probe about who is reviewing its "Highly Confidential" information, and at the same time not unduly burden BD's counsel with staffing predictions or unworkable constraints, any attorney or non-attorney technical specialist who works for outside counsel and engages in patent prosecution or materially assists in patent prosecution, and who has not yet been disclosed in any of the papers filed in relation to this joint motion, shall execute a declaration before receiving any of the opposing party's "Highly Confidential" documents in this case. The declaration shall give a brief background of the individual's general role and experience in patent prosecution, and shall detail whether that person is actively involved in, or materially assisting others who are actively involved in, prosecuting patent applications that relate to the subject matter of the patents-in-suit or disclose as prior art the patents-in-suit. The declaration shall be served on the opposing party before disclosure of any "Highly Confidential" information. The parties shall follow the same procedure for objecting to the receipt of information by the proposed patent prosecutor as is already established for objecting to receipt of the information by an independent expert. If the parties do not agree on disclosure to the proposed patent prosecutor, the objecting party shall move the court for a ruling within seven days of the objection. The objecting party may seek imposition of a prosecution bar as to the declarant.

While the court is aware that attorneys at these firms are already bound by state and likely firm-wide ethical obligations, requiring the execution of the declaration will emphasize the importance to the viewer to segregate Gen–Probe's confidential information from other clients of the firms who may compete in the same technology area. It will also provide Gen–Probe with important information needed to evaluate whether it thinks the attorney should be subject to a prosecution bar. This arrangement is not meant to cast suspicion on an individual lawyer or technical specialist at Foley Hoag or Knobbe Martens, but rather is a way for Gen–Probe to keep track of which patent prosecutors are

reviewing its confidential information, just as BD would be entitled to such information if Gen–Probe discloses BD's "Highly Confidential" information to outside patent prosecutors or technical consultants.

The parties shall make the appropriate revisions to the proposed protective order reflecting this requirement. The parties shall lodge that revised protective order with Judge Stormes by *May 5, 2010.*

**IT IS SO ORDERED.**